NO. 81-158

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

MOUNTAIN STATES RESOURCES, INC.,

        Plaintiff and Appellant,

vs.

M. D. EHLERT,

        Defendant and Respondent,

vs.

MONTE GRANDE EXPLORATION, INC.,

        Additional Defendant on
        Counterclaim and Appellant.

---

Appeal from:  District Court of the Ninth Judicial District,
             In and for the County of Glacier
             Honorable R. D. McPhillips, Judge presiding.

Counsel of Record:

    For Appellant:

    Frisbee, Moore & Stufft, Cut Bank, Montana

    For Respondent:

    Alexander & Baucus, Great Falls, Montana

---

Submitted on briefs: July 30, 1981

Decided:  NOV 27 1981

Filed:  NOV 27 1981

_Thomas J. Kearney_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Mountain States Resources, Inc., filed suit against Ehlert to set aside Ehlert's oil and gas lien and to collect damages for slander of title. Ehlert counterclaimed and joined Monte Grande Exploration, Inc., an undisclosed principal of Mountain States Resources, in the suit. Montana's Ninth Judicial District, in and for Glacier County, upheld the lien and awarded judgment to Ehlert. Mountain States Resources and Monte Grande Exploration raise eleven issues on appeal:

1. Was the lien filed prematurely?

2. Are oil and gas liens proper for work done on gas pipelines?

3. Does a lien on a pipeline entitle the claimant to a lien on oil and gas leaseholds served by the pipeline?

4. Must a claimant use the exact language contained in the statute when filing a lien?

5. Was there an overstatement of amounts due in the lien?

6. Was the construction completion date correctly listed in the lien?

7. Was the lien invalid because the pipeline owner was not listed in the lien?

8. Was a proper description of the property given in the lien?

9. Was the lien's affidavit sufficient?

10. Was the lien against Monte Grande Exploration invalid because Monte Grande Exploration was not named in the original lien?

11. Is Ehlert liable for slander of title?

On September 27, 1977, the plaintiff-appellant, Mountain States Resources, Inc. (MSR), contracted with M. D. Ehlert to furnish and erect three steel buildings to be used in connection with the Gypsy-Highview (natural gas) Gathering System (GHGS) in Pondera and Teton counties in Montana. Monte Grande Exploration, Inc. (MGE) was an undisclosed principal of MSR. GHGS was eventually owned 50% by MSR, 25% by MGE, and 25% by associates of MSR and MGE. The same man, J. V. Montalban, is principal executive officer, 10% stock owner, and dominant driving force of both MSR and MGE.

On September 27, 1977, MGE owned the oil and gas lease on the land where the buildings were located, but there was no written lease for the actual land. MSR was the agent and project manager for the construction project. MGE was an undisclosed principal. MSR and MGE both owned oil and gas leases adjoining and serviced by the GHGS buildings.

GHGS was designed to gather, process, transport and deliver natural gas from MSR and MGE wells to Montana Power Company, which purchased the gas. GHGS became an "independent" legal entity after the MSR-Ehlert contract was finalized.

A $43,199 building contract provided for a compressor building with flashing, and sweetening and dehydrator buildings without flashing. (Flashing is the material placed around a pipe at the point where it intersects a wall in order to make the joint weatherproof.) Flashing provided for the two latter buildings was an extra, to be paid for in addition to the $43,199 contract price. Between October 22, 1977, and December 15, 1977, Ehlert, at the specific request of Bo Mikkelson, MSR's supervisory agent, installed flashing

on the sweetening and dehydrator buildings. On January 18, 1978, MSR paid Ehlert the balance due on the $43,199 contract, but refused to pay for the extra flashing, amounting to $1,818.39, until corrections were made.

On March 8, 1978, after several requests for payment had been refused, Ehlert filed a $1,818.39 lien pursuant to section 45-1001, R.C.M. 1947, now section 71-3-1002, MCA, against the proceeds of any natural gas sold by MSR (but not MGE and GHGS) to Montana Power Company.

MSR filed suit against Ehlert to set aside his lien and to recover $15,000 for slander of title as a result of the improper filing of the lien. Ehlert, by answer and counterclaim, joined MGE and sought to foreclose the lien against MSR and MGE.

The trial court, sitting without a jury, dismissed MSR's complaint and awarded Ehlert $1,818.39 for the lien, plus interest and attorney fees, totaling $8,024.19. The court also ruled that the lien was valid against all MSR and MGE property named in the lien, and the proceeds of all natural gas sold by MSR, MGE or GHGS named in the lien. MSR and MGE appeal.

Issue No. 1: Was the lien filed prematurely, therefore making the lien invalid? We hold that the lien was timely and valid.

MSR made the last contract payment of $14,199, which was due seven days after the buildings were complete and inspected, on January 18, 1978. All work orders for the extra flashing were complete on that date. Adjustments and repairs were subsequently made on the doors and flashing, but the contract work was substantially complete. Therefore,

-4-

the lien, filed on March 8, 1978, was filed after the building was substantially complete, and the lien is valid. See, Turf Irr. & W.W. Sup. Co. v. Lawyers Title of Phoenix (1975), 24 Ariz.App. 80, 535 P.2d 1311, 1314; Tabet Lumber Company v. Baughman (1968), 79 N.M. 57, 439 P.2d 706, 709. Cf., Western Plumbing of Bozeman v. Garrison (1976), 171 Mont. 85, 556 P.2d 520; Olson v. Westfork Properties, Inc. (1976), 171 Mont. 154, 557 P.2d 821.

Issue No. 2: Does section 45-1001, R.C.M. 1947, now section 71-3-1002, MCA, permit an oil and gas lien for labor, services and materials provided on the gas pipeline? We hold the lien is valid.

Section 45-1001, R.C.M. 1947, provides in pertinent part:

> "Any person . . . which shall contract . . . with the owner of any leasehold for . . . gas . . . furnish material or services used in . . . completing, [or] operating [a] gas pipeline . . . whether or not such material is incorporated therein or becomes a part thereof, shall have a lien . . . upon all material owned by the owner of such leasehold . . . and . . . upon all oil or gas produced from such leasehold . . . ."

J. V. Montalban, president of MSR and MGE, noted in a letter to Ehlert, that using the three buildings Ehlert constructed, without doors, during December and January caused "severe and impossible working conditions." It follows that the completed buildings, with doors installed, were an essential part of the gas gathering system. In any event, a lien is valid under the statute "whether or not such material is incorporated therein or becomes a part thereof." Elhert is therefore entitled to a gas lien for the labor and materials he provided. See, Nemeroff v. Cornelison Engine Maintenance Co. (Okla. 1962), 369 P.2d 604.

-5-

Issue No. 3: Does Ehlert's lien on the gas gathering system entitle him to a lien on the leaseholds served by the system? MSR claims that MSR and MGE, which own the gas leases, are completely independent of GHGS, which owns the gathering system. Thus, the lien against the gas gathering system does not extend to MSR and MGE. Ehlert claims, and we agree, that GHGS is a front for MSR and MGE. Ehlert contracted with MSR, and MSR served as the agent and project manager for the building project. MGE was an undisclosed principal in the building project. GHGS was not established as an independent entity and owner of the gas gathering system until after Ehlert started constructing the buildings. GHGS did not obtain a written lease for the land on which buildings sit until after the lien was filed. Thus, we hold that Ehlert contracted with MSR and MGE, and that Ehlert's lien extends to the designated MSR leases, MGE leases, and the GHGS. See generally, Blose v. Havre Oil & Gas Co. (1934), 96 Mont. 450, 31 P.2d 738.

Issue No. 4: Did Ehlert use the proper language, as per section 45-1001, R.C.M. 1947, now section 71-3-1002, MCA, in his lien? MSR asserts that Ehlert is required to use the exact language of the statute and claim a lien on the "oil or gas produced from such leaseholds and the proceeds thereof inuring to the working interest. . ." The language Ehlert actually used was "claimant makes this lien and asserts his rights under provisions of R.C.M., of 1947, Section 45-1002 et seq." We hold that the language used by Ehlert, which cites the oil and gas lien statute, is adequate.

Although this Court has not specifically addressed

this issue in the past, we have noted that "[l]ien statutes should receive a liberal construction to the end that the objects and purposes of the statutes may be carried out." Caird Engineering Works v. Seven-Up Gold Mining Co. (1941), 111 Mont. 471, 479, 111 P.2d 267, 272; Fausett v. Blanchard (1970), 154 Mont. 301, 463 P.2d 319, 322. Nothing in the statute requires parties filing liens to use the exact language of the statute relied upon. This Court shall refrain from creating an additional burden for parties filing liens. The statute, liberally construed, allows general language to be used in the lien.

Issue No. 5: Did Ehlert overstate the amount claimed by 10%, and therefore invalidate the lien? We hold that the $1,818.39 claimed is valid.

The trial court's findings of fact established that $1,818.39 was due and owing. While there was evidence that Ehlert added 10% to his actual costs, there was also evidence that this was his standard contracting procedure. In any event, "[a]n overstatement of the amount due, absent fraud or bad faith, does not invalidate a lien." Figgins v. Stevenson (1973), 163 Mont. 425, 517 P.2d 735, 737.

Issue No. 6: Was the construction completion date correctly listed in the lien? The lien shows December 15, 1977, as the last day of work. Ehlert claims that only repairs and adjustments were made after that date. MSR contends that the work was not completed until January 12, 1978. The lien was filed on March 8, 1978. Thus, the exact date that work was completed is immaterial, as either date is well within the six-month limit allowed by section 45-1004, R.C.M. 1947, now section 71-3-1004, MCA. If no

-7-

party is injured, a minor technicality should not preclude an otherwise valid lien from being enforced. See, Brown v. Farrell (1971), 258 Or. 348, 483 P.2d 453, 455.

Issue No. 7: Was the lien invalid because GHGS, the pipeline owner, was not listed in the lien? As we noted above, Ehlert contracted with MSR to construct the buildings. GHGS did not become a separate legal entity until sometime after the contract was made. Further, there was no written lease for the land on which the buildings sit until after the lien was filed. Therefore, Ehlert's failure to list GHGS in the lien was not error and did not affect the lien. See generally, Blose v. Havre Oil & Gas Co. (1934), 96 Mont. 450, 31 P.2d 738.

Issue No. 8: Was a proper description of the property given in the lien? MSR claims that since one of the leases listed as belonging to MSR actually belonged to MGE, the lien is invalid. We do not consider this to be fatal to the lien.

As noted above, MSR was the agent and project manager of the building project, and it is therefore liable to Ehlert. MGE was an undisclosed principal in the construction project and is therefore also liable. Finally, GHGS was the successor in interest and is also liable. Regardless of which corporation held title at the time of the lien, filing the lien would give notice of the existence of the lien to interested third parties, which is the purpose of the lien. Morrison-Maierle, Inc. v. Selsco (1980), ____ Mont. ____, 606 P.2d 1085, 1087, 37 St.Rep. 299. The description was adequate to properly identify the property subject to the lien; consequently, the description and the lien are valid.

Varco-Pruden v. Nelson (1979), ___ Mont. ____, 593 P.2d 48, 50, 36 St.Rep. 704.

Issue No. 9: Was the lien's affidavit sufficient? We hold that the affidavit was adequate.

An affidavit is defined as "a written statement, under oath, sworn to or affirmed by the person making it before some person who has authority to administer an oath or affirmation." State v. Knight (1976), 219 Kan. 863, 549 P.2d 1397, 1401. The maker must have personal knowledge of the information contained in the statement and must swear to its validity. Saunders Cash-Way, Etc. v. Herrick (1978), 179 Mont. 233, 587 P.2d 947, 949, 35 St.Rep. 1846. Ehlert's affidavit contained written information about items of which he had personal knowledge. He swore to its validity before a notary public. Therefore, the affidavit was adequate.

Issue No. 10: Was the lien against MGE invalid because MGE was not named in the original lien? We hold that the District Court's finding of liability was correct.

True, MGE was not named in the lien as required by section 45-1004, R.C.M. 1947. But, the District Court found there was an agent-principal relationship between MSR and MGE. Ehlert was unaware of this relationship until _after_ he filed the lien. Consequently, Ehlert properly joined MGE in the suit when Ehlert filed his answer and counterclaim. Ehlert has a valid lien against MGE. Miller v. Melaney (1977), 172 Mont. 74, 560 P.2d 902, 904.

Issue No. 11: Is Ehlert liable for slander of MSR's title? Since we have found that Ehlert has a valid lien, we need not address this issue.

-9-

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices