No. 98-165

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 101

294 Mont. 282

983 P.2d 873

KEN SWAIN d/b/a MONTANA

CONCRETE FINISHING,

Plaintiff and Appellant,

v.

THOMAS M. BATTERSHELL and

BATTERSHELL PROPERTIES, INC.,

Defendant and Respondent.

No

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Palmer A. Hoovestal, Helena, Montana

For Respondent:

David N. Hull, Helena, Montana

Submitted on Briefs: September 17, 1998

Decided: May 18, 1999

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

**¶1. On December 27, 1995, Appellant Ken Swain d/b/a Montana Concrete Finishing (Swain) filed a lawsuit against Respondents Thomas M. Battershell (Battershell) and Battershell Properties, Inc. (BPI) to execute a construction lien foreclosure and to recover damages for breach of contract, promissory estoppel, and breach of the covenant of good faith and fair dealing. On February 21, 1996, Battershell and BPI filed their answers. In addition, BPI counterclaimed to recover damages for breach of contract, promissory estoppel, breach of the covenant of good faith and fair dealing, and fraud.**

**¶2. On November 12, 1996, Battershell filed a motion for partial summary judgment on Count I, concerning the construction lien foreclosure, on the ground that the construction lien was invalid and unenforceable as a matter of law. On February 7, 1997, the First Judicial District Court, Lewis and Clark County, issued an order granting Battershell's partial summary judgment motion. The remaining counts proceeded to a non-jury trial in July and August of 1997. On December 26, 1997, the court issued its findings of fact, conclusions of law, and order concluding that Swain was entitled to judgment in the amount of $2000, but that Battershell was entitled to $2650 in attorney's fees incurred in defending the construction lien foreclosure part of the lawsuit. The court also concluded that BPI lacked standing to bring a counterclaim against Swain and, therefore, was not entitled to recover any damages pursuant to its counterclaim. The parties appealed to this Court.**

¶3. On April 20, 1998, Battershell filed with this Court a motion to dismiss Swain's appeal pursuant to Rule 22, M.R.App.P. Battershell asserted that in January 1997, Swain had filed an amended construction lien naming Cascade Exchange, Inc. (Cascade) as the contracting owner instead of Battershell. Battershell argued that the filing of the amended construction lien rendered moot any appeal concerning the validity of the original construction lien. On April 5, 1998, we issued an order denying Battershell's motion to dismiss without prejudice.

¶4. Swain appeals from the court's grant of partial summary judgment in favor of Battershell, and the later grant of attorney's fees to Battershell, concerning the construction lien foreclosure count of the lawsuit. Battershell and BPI cross-appeal from the court's findings of fact, conclusions of law, and order concerning the remaining counts of the lawsuit. Further, Battershell renews his motion to dismiss Swain's appeal for mootness. We conclude that Swain's appeal is not moot and we affirm on each issue.

¶5. Swain presents the following issues for review:

¶6. 1. Did the court err in granting Battershell's partial summary judgment motion on the ground that the construction lien was invalid as a matter of law?

¶7. 2. Did the court err in granting Battershell his reasonable attorney's fees in defending the construction lien foreclosure?

¶8. Battershell presents the following issue for review: Did the court err in finding that the sidewalk was poured in accordance with industry standards and that the lack of uniformity in the finish on the sidewalk was caused by rain?

¶9. BPI presents the following issue for review: Did the court err in concluding that BPI did not have standing to bring a counterclaim because it was not the party with whom Swain had contracted?

## FACTS

¶10. BPI is a Montana corporation which owns several property holdings in and around Helena. Battershell is president of BPI and Jeff Battershell (Jeff), Battershell's son, is vice-president of BPI. BPI is the record owner of a tract of real

property in Helena on which a mini-mall was built. BPI obtained ownership of this property on February 27, 1996, pursuant to a "1031 like kind exchange" under the Internal Revenue Code. Prior to this exchange, Cascade owned the mini-mall property. Construction of the mini-mall began in 1995, during Cascade's ownership of the property. Battershell was the general contractor responsible for overseeing construction of the mini-mall.

¶11. On September 7, 1995, Battershell contacted Swain to inquire about Swain's availability to pour the concrete slab at the mini-mall. He told Swain that the foundation of the mini-mall had already been laid but that the work was progressing slowly. He told Swain he needed the slab to be poured in three days. Swain agreed to meet Battershell at the project site to inspect it. At the project site, Battershell represented to Swain that he owned the mini-mall property. After discussing the project, Swain contracted with Battershell to pour and finish the concrete slab at the mini-mall for $9100, to pour and finish the concrete slab at an adjacent store for $1200, and to pour and finish a concrete sidewalk at the mini-mall for $2000. The parties agreed that the mini-mall sidewalk would have a fine broom finish.

¶12. Swain performed the slab work for the first two jobs in September and received full payment. Swain performed the sidewalk work on October 3 and 5, 1995, but did not receive payment. Battershell was dissatisfied with the quality of workmanship, complaining that the sidewalk did not have a uniform fine broom finish. Battershell refused to pay Swain unless Swain rebuilt the sidewalk. Swain initially told Battershell that he thought he could fix the sidewalk. However, Swain did not return to the project site.

¶13. On November 7, 1995, Swain recorded a construction lien against the mini-mall property, naming Thomas M. Battershell as the contracting owner of the property. Thereafter, Swain filed suit to foreclose on the property and to recover contract damages. Battershell counterclaimed to recover contract damages and filed a motion for partial summary judgment on the issue of the construction lien foreclosure. On February 7, 1997, the court granted Battershell's motion, concluding that because Thomas M. Battershell was not the contracting owner of the mini-mall property, Swain's construction lien failed to meet the statutory notice requirements and was invalid as a matter of law. The parties' remaining claims proceeded to a non-jury trial.

¶14. At trial, Swain testified that he poured the sidewalk in a workmanlike manner and in accordance with industry standards. He testified that the sidewalk was a commercially acceptable product, and noted that Battershell and the tenants and customers of the mini-mall were using the sidewalk. Swain testified that on the day he began work on the sidewalk, he had finished laying the forms for the sidewalk when he noticed inclement weather approaching. Swain and his crew told Jeff that they would not be able to achieve the fine broom finish requested by Battershell if the sidewalk was poured and finished in the rain. Jeff told Swain that it was imperative that the sidewalk be completed that day because the pavers were waiting to begin the next day and may not be available at another time due to other obligations. Swain testified that Battershell had also told him in a prior conversation that construction of the mini-mall sidewalk must proceed according to a tight schedule. Despite Swain's advice to the contrary, Jeff instructed Swain and his crew to pour the sidewalk that day.

¶15. Swain testified that after pouring much of the 400 foot sidewalk, it began to rain and continued raining for most of the day. He stated that he covered the sidewalk with rolls of visqueen but that the wind and rain made it difficult to adequately protect the sidewalk. Swain stated that much of the water accumulating at the building site flowed on to the sidewalk. He further stated that the visqueen itself affected the finish of the sidewalk because it "changes the way the concrete dries." Swain stated that he and his crew finished the sidewalk with a steel trowel and fine broom finish as best they could under the conditions caused by the rain and visqueen.

¶16. Swain testified that after finishing the sidewalk, he asked Jeff about the placement of grooves in the sidewalk to control cracking. Jeff told Swain not to make any grooves. After Swain advised against this, Jeff then told Swain to place the grooves all along the sidewalk at every "column line," approximately 35 feet apart. Again, Swain advised against this procedure and recommended placing grooves along the sidewalk 5 feet apart. Jeff refused Swain's recommendation and instead instructed Swain to place grooves at every column line and half way in between, which would place the grooves approximately 17 feet apart. Swain did as he was instructed. More facts will be provided as necessary to dispose of the issues raised.

## DISCUSSION

## A. Swain's appeal

### *Issue 1*

¶**17.** Did the court err in granting Battershell's partial summary judgment motion on the ground that the construction lien was invalid as a matter of law?

¶**18.** Swain contends the District Court erred in determining that the construction lien filed November 7, 1995, was invalid as a matter of law because it named Battershell, rather than Cascade, as the contracting owner of the mini-mall property. Swain acknowledges that for a construction lien to be valid and enforceable, it must correctly name the contracting owner of the property. Section 71-3-535(3)(c), MCA. Swain also acknowledges that Cascade was the record owner of the property during the time Swain performed his work on the property. However, Swain maintains that under the circumstances of this case, naming Battershell, instead of Cascade, as the contracting owner does not affect the validity of the construction lien. Swain advances three arguments to support his position.

¶**19.** First, Swain argues that construction liens are to be liberally construed in favor of the lienor. Fausett v. Blanchard (1969), 154 Mont. 301, 308, 463 P.2d 319, 322. Swain cites Mountain States Resources v. Ehlert (1981), 195 Mont. 496, 503, 636 P.2d 868, 872, for the proposition that naming the agent or project manager of an undisclosed principal of a building site as the contracting owner on a construction lien does not affect the validity of the lien. In arguing the applicability of Ehlert to this case, Swain asserts that Cascade was an undisclosed principal and that Battershell was the agent of Cascade. Thus, Swain argues, the lien should not fail simply because Battershell was named as the contracting owner instead of Cascade.

¶**20.** Second, Swain argues that Montana's construction lien statutes do not require the contracting owner to be the record owner for purposes of establishing a valid construction lien. Swain asserts that Battershell qualifies as a "contracting owner" as that term is defined in § 71-3-522(4)(a), MCA, because Battershell holds an interest in the mini-mall property. Swain bases this assertion on the fact that BPI currently owns the mini-mall property and Battershell is president of BPI.

¶**21.** Lastly, Swain asserts that he relied to his detriment on Battershell's representation that Battershell owned the mini-mall property. While not explicit, it appears Swain urges this Court to reverse the District Court's grant of partial

summary judgment based on the principle of equitable estoppel.

¶22. Before addressing these arguments, we first address Battershell's renewed motion to dismiss Swain's appeal on the ground that it is moot. Battershell points out that on January 13, 1997, Swain amended his construction lien to name Cascade as the contracting owner. Battershell cites Montana and Ninth Circuit cases for the rule that an amended pleading supersedes the original pleading, and makes the original pleading *functtus officio*, of no force or effect. *See* Monarch Lumber Co. v. Haggard (1961), 139 Mont. 105, 110, 360 P.2d 794, 796; Ferdik v. Bonzelet (9th Cir. 1992), 963 F.2d 1258, 1262. In applying <u>Monarch</u> to this case, Battershell argues that Swain's amended construction lien superseded the original construction lien thereby making it of no force or effect. On this basis, Battershell argues that Swain's amended construction lien renders moot any inquiry into whether the court erred in determining the invalidity of the original construction lien. We disagree.

¶23. First, a construction lien is not a pleading. Cole v. Hunt (1949), 123 Mont. 256, 261, 211 P.2d 417, 420. This distinction alone renders <u>Monarch</u> inapplicable. Second, even were we to apply the underlying rationale of <u>Monarch</u> to the instant case, as Battershell suggests, we are not convinced that the original construction lien would be superseded. Section 71-3-535(1), MCA, provides in relevant part that a construction lien does not attach and cannot be enforced unless it was filed within 90 days after the final furnishing of services or materials. Swain last furnished services or materials on November 30, 1995. The amended construction lien was filed January 13, 1997, well after the 90-day statutory filing period had lapsed. There exists no statute providing for "relation back" of amended construction liens. Upon the foregoing, we hold that Swain's appeal is not moot and we deny Battershell's renewed motion to dismiss. We turn then to the merits of this issue.

¶24. Our standard of review in appeals from summary judgment rulings is *de novo*. Mead v. M.S.B., Inc. (1994), 264 Mont. 465, 470, 872 P.2d 782, 785. When we review a district court's grant of summary judgment, we apply the same evaluation, based on Rule 56, M.R.Civ.P., as the district court. Bruner v. Yellowstone County (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. We review a district court's legal conclusions to determine whether they are correct. <u>Bruner</u>, 272 Mont. at 264, 900 P.2d at 903.

¶25. Pursuant to Montana's construction lien statutes, a person who furnishes services or materials pursuant to a real estate improvement contract may claim a

construction lien, only to the extent provided in the statutes, to secure the payment of the contract price. Section 71-3-523, MCA. The construction lien extends to the interest of the contracting owner in the real estate as that interest exists at the commencement of work or is thereafter acquired in the real estate. Section 71-3-525 (1), MCA. A "contracting owner" is one who owns an interest in real estate and who enters into an express or implied contract for the improvement of the real estate. Section 71-3-522(4)(a), MCA. A construction lien will not attach unless the lien statement contains the name of the contracting owner. Section 71-3-535(3)(c), MCA. A construction lien is not valid unless the lien statement is filed with the county clerk and a copy of the lien statement, along with a notice of construction lien, is served upon each owner of record of the property named in the lien. Sections 71-3-534(2) and -535(2)(b), MCA.

¶26. The purpose of these procedural requirements is to impart notice to the owner of real property that a lien has been filed against his or her property, and to protect all parties dealing with the property, including subsequent purchasers. General Electric Supply Co. v. Bennett (1981), 192 Mont. 110, 115, 626 P.2d 844, 847; Cole, 123 Mont. at 259, 211 P.2d at 419. This Court has consistently held that the procedural requirements of construction lien statutes will be strictly construed, but that once the procedure has been fulfilled, the statutes will be liberally construed so as to give effect to their remedial purpose. General Electric, 192 Mont. at 113-14, 626 P.2d at 846. *See also* Varco-Pruden v. Nelson (1979), 181 Mont. 252, 593 P.2d 48 (holding that a construction lien is perfected only after full compliance with the lien statutes). Based upon this rule of strict construction concerning procedure, we have held that failure to state the owner, or person whose interest in property is sought to be charged, on the lien statement is fatal to the lien. Cascade Electric Co., Inc. v. Associated Creditors, Inc. (1950), 124 Mont. 370, 375, 224 P.2d 146, 149; Blose v. Havre Oil & Gas Co. (1934), 96 Mont. 450, 464-65, 31 P.2d 738, 743; Missoula Mercantile Co. v. O'Donnell (1900), 24 Mont. 65, 72, 76-78; 60 P. 594, 596.

¶27. Applying these rules to the instant case, we determine that the District Court did not err in concluding that Swain's construction lien was invalid. The record demonstrates that at the time Swain filed his construction lien, Cascade was the owner of the mini-mall property and, hence, the person whose interest was sought to be charged. The record is void of any evidence showing that Battershell held an interest in the property. Swain does not cite any authority for the proposition that Battershell owned an interest in the property simply because he was president of

BPI, the successor in interest to Cascade. Absent evidence showing that Battershell held an interest in the property at the time the construction lien was filed, the listing of Battershell as the contracting owner on the lien statement was fatal to the lien.

¶28. Although we held in Ehlert that naming the agent of an undisclosed principal as the contracting owner on the lien statement was not fatal to the lien, Ehlert is distinguishable from the instant case. Our decision in Ehlert includes only a cursory account of the facts giving rise to that case and we note that some facts are contradictory. For example, the facts section states that one natural gas lessee (MGE) was the undisclosed principal of another (MSR), but fails to state the basis of this agency relationship. Ehlert, 195 Mont. at 499-500, 636 P.2d at 870. Also, the facts section first indicates that the lien claimant filed a lien against the proceeds of MSR, but later indicates that the lien was filed against property of MSR and MGE. Ehlert, 195 Mont. at 499-500, 636 P.2d at 870. Without a more coherent statement of the facts in Ehlert, we have no basis on which to determine that the factual situation of this case is analogous to that of Ehlert.

¶29. Aside from being unable to discern the factual situation in Ehlert, we note that Ehlert was decided pursuant to a statutory scheme different from the one involved in the present case. Ehlert involved an oil and gas lien which was filed pursuant to § 71-3-1002, MCA. That statute allows a person who has furnished services or materials with "the owner of any leasehold for oil and gas purposes or the owner of any gas pipe or oil pipeline or with the trustee or agent of such owner" to file a lien for sums due and payable against such leasehold or oil and gas pipeline, the equipment used in the oil or gas extraction, and the proceeds thereto inuring to the "working interest" therein. Further, the definition of "owner" set forth in § 71-3-1001(3), MCA, is broader than the definition of "contracting owner" in § 71-3-522(4)(a), MCA. Under § 71-3-1001(3), MCA, "owner" includes persons holding any interest in legal or equitable title, or both, and purchasers under executory contract. In Ehlert, it appears natural gas leases had been shifted between three different corporate entities during the period Ehlert furnished his services and filed his lien. Ehlert, 195 Mont. at 501, 503, 636 P.2d at 871, 872. Based on the limited facts reported in Ehlert, we determine that Ehlert was decided upon facts unique to that case alone. For these reasons we hold that Ehlert is inapplicable to the instant case.

¶30. Finally, we are not persuaded by Swain's argument concerning equitable estoppel.

It is the general rule that in order to predicate an estoppel against a person on the ground of his nondisclosure of an estate or interest in real property, it must be shown that the party asserting the estoppel had no knowledge, actual or constructive, of the real condition of the title to the property in question. It is essential that he was not only destitute of knowledge of the true state of the title, but also of any convenient and available means of acquiring such knowledge.

. . .

[A] person cannot assert an estoppel on the basis of the failure of an owner of an interest in real estate to disclose such interest while the aggrieved party was carrying on some transaction relating to such property, if the person seeking to establish the estoppel has failed to avail himself of the constructive notice afforded by the public records.

28 Am.Jur.2d *Estoppel and Waiver* §§ 95-96. In this case, Swain had constructive knowledge of Cascade's ownership of the mini-mall property and had a convenient and available means of ascertaining such ownership. The warranty deed pursuant to which Cascade owned the mini-mall property was duly recorded in the Lewis and Clark County Clerk and Recorder's Office. Had Swain gone to the clerk and recorder's office and examined the title of the mini-mall property, he would have found that Cascade owned the property. Under these circumstances, we determine that Swain is not entitled to equitable estoppel. Upon the foregoing, we hold that there exist no issues of material fact and that the District Court's grant of partial summary judgment to Battershell was proper.

*Issue 2*

¶**31. Did the court err in granting Battershell his reasonable attorney's fees in defending the construction lien foreclosure?**

¶**32. Swain argues that should this Court reverse the District Court's partial summary judgment ruling, it should also reverse the District Court's grant of attorney's fees to Battershell. Having determined that the District Court did not err in granting Battershell's partial summary judgment motion, we hold that the award of attorney's fees to Battershell was proper.**

No

## B. Battershell's and BPI's Cross-Appeal

### *Issue 1*

**¶33. Did the court err in finding that the sidewalk was poured in accordance with industry standards and that the lack of uniformity in the finish on the sidewalk was caused by rain?**

**¶34. We review a district court's findings of fact to determine whether the findings are clearly erroneous. Rule 52(a), M.R.Civ.P.; In re Marriage of Pfeifer (1997), 282 Mont. 461, 467, 473, 938 P.2d 684, 688, 692. A finding is clearly erroneous only if it is not supported by substantial evidence, the trial court misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed. In re Marriage of Stufft (1996), 276 Mont. 454, 459, 916 P.2d 767, 770. We have defined substantial evidence as "evidence that a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Barrett v. Asarco Inc. (1990), 245 Mont. 196, 200, 799 P.2d 1078, 1080. In determining whether a finding of fact is clearly erroneous, "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Rule 52(a), M.R.Civ.P.**

**¶35. The evidence and testimony produced at trial showed that the sidewalk did not have a uniform fine broom finish. Some areas of the sidewalk had a fine broom finish, but others had a rough broom finish. Neither party disputed this fact. The parties disputed only the cause of the lack of uniformity in the fine broom finish. Battershell argued that contractor error caused the problem with the finish while Swain argued that rain caused the problem. Both Battershell and Swain produced experts at trial to give opinions concerning the cause of the lack of uniformity in the fine broom finish. At the conclusion of the presentation of evidence, the court found that rain caused the lack of uniformity in the fine broom finish and found that Swain poured the concrete according to industry standards. Battershell contends that substantial evidence does not exist to support these findings. We disagree.**

**¶36. Three members of Swain's crew who had worked on pouring and finishing the sidewalk testified that although the rainy conditions affected the finish on some areas of the sidewalk, the sidewalk was nonetheless an acceptable product. One crew member, Carl Mayes, who has eleven years experience in the concrete finishing**

industry, testified that the broom finish was applied in a workmanlike manner. Another crew member, Edwin Swain, testified that he did not observe any problems such as "scaling marks."

¶37. Two expert witnesses testified on Swain's behalf. Thomas Harrison (Mr. Harrison) owns a concrete finishing business in Helena and has 23 years experience in concrete finishing. Peter Ryan (Mr. Ryan), who is the Vice-President of Operations for Greenway Enterprises, Inc., a local general contractor, has 18 years experience in the construction industry and has supervised concrete finishing subcontractors numerous times. Both Mr. Harrison and Mr. Ryan testified that upon examining the sidewalk, they observed that the sidewalk was level, its edges were straight, and the broom finish was acceptable. Mr. Harrison stated that he observed no humps, bumps, discoloration, or trowel marks in the sidewalk. Both experts stated that the lack of uniformity in the fine broom finish was not a safety hazard and was no cause for concern. Both experts opined that the sidewalk had been poured and finished in accordance with generally acceptable practices in the concrete finishing industry. Mr. Ryan added that he would not recommend pouring concrete in the rain. He stated that in his opinion, the owner should accept responsibility for any problems caused by the weather.

¶38. Battershell's expert, Jerry Bowser (Mr. Bowser), who is a professional materials engineer with Maxim Technologies in Helena and who often acts as a consultant on concrete finishing projects, noted that the concrete used by Swain contained an additive called Posi-tech 20 and noted that Swain mixed the concrete with hot water. He stated that the use of Posi-tech 20 and hot water made the concrete set faster than normal. He opined that the lack of uniformity in the fine broom finish was caused by the concrete setting faster than Swain's crew could finish it. However, on cross-examination, Mr. Bowser admitted that humidity and the presence of visqueen over the concrete also affect the rate at which concrete sets. He testified that the presence of rainwater on concrete will lengthen the set time for the top quarter inch of the concrete. Mr. Bowser testified there are three types of broom finishes: fine, medium, and heavy. When asked what type of broom finish he would recommend for a commercial use building, Mr. Bowser recommended a medium to heavy broom finish. Mr. Bowser testified that upon examining the sidewalk, he observed a finish that was between fine and heavy.

¶39. Both Swain and Battershell submitted evidence concerning the cause of the lack

of uniformity in the fine broom finish of the sidewalk. The court believed Swain's evidence to be more credible. In non-jury trials, it is the duty and function of the District Court to resolve conflicts in evidence. In re Marriage of Wessel (1986), 220 Mont. 326, 333, 715 P.2d 45,50. The credibility of witnesses and the weight to be afforded their testimony is a matter left to the sound discretion of the District Court. Rule 52(a), M.R.Civ.P.; Keebler v. Harding (1991), 247 Mont. 518, 523, 807 P.2d 1354, 1357. Based on the record, we determine that substantial evidence exists to support the District Court's findings, that the court did not misapprehend the effect of the evidence, and that no mistake has been committed.

¶40. Next, Battershell argues that the above findings were erroneous because they were based on a theory of quantum meruit, and Swain never pleaded quantum meruit. Our review of the record reveals that Swain advanced the theory of quantum meruit, or unjust enrichment, in the parties' joint proposed pre-trial order. The pre-trial order provides that it shall supersede the pleadings and govern the course of the trial of the case, unless modified to prevent manifest injustice. Battershell did not move to modify the pre-trial order. We also note that Swain again advanced the theory of quantum meruit in his proposed findings of fact and conclusions of law submitted to the court. Battershell did not object. Based on these facts, Battershell's claim that the court's findings were outside the pleadings is without merit. Upon the foregoing, we hold that the court's findings that rain caused the lack of uniformity in the fine broom finish and that the sidewalk was poured in accordance with industry standards were not clearly erroneous.

*Issue 2*

¶41. Did the court err in determining that BPI did not have standing to bring a counterclaim because it was not the party with whom Swain had contracted?

¶42. BPI counterclaimed in this action to recover damages for breach of contract, promissory estoppel, breach of the covenant of good faith and fair dealing, and fraud. These claims proceeded to trial but were not ruled upon because the District Court determined that BPI did not contract with Swain and, therefore, did not have standing to sue. BPI assigns error to the court's conclusion.

¶43. The court based its conclusion on the facts that Battershell was the general

No

contractor overseeing construction of the mini-mall, Battershell signed his own name to the construction contract, and there is no reference on the document that he was signing it on behalf of BPI. Further, Swain notes that Battershell represented that he owned the mini-mall property, and never mentioned the existence of BPI during any conversation with Swain. Although Battershell testified at trial that BPI was the general contractor overseeing construction of the mini-mall, this testimony does not provide a basis for finding error. The credibility of witnesses and the weight to be afforded their testimony is a matter left to the sound discretion of the District Court. Rule 52(a), M.R.Civ.P.; Keebler, 247 Mont. at 523, 807 P.2d at 1357. Based on the above facts, we conclude that the court did not err in determining that BPI was not the party with whom Swain contracted and that BPI was not entitled to contract damages.

¶44. Affirmed.


/S/ WILLIAM E. HUNT, SR.


We Concur:


/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ JAMES C. NELSON

file:///C|/Documents%20and%20Settings/cu1046/Desktop/opinions/98-165_(05-18-99)_Opinion.htm (15 of 15)4/5/2007 4:24:12 PM