No. 00-168

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 355N

KEVIN J. PETRI, d/b/a ALL PURPOSE SERVICES,

Plaintiff and Appellant,

v.

JAMES TALCOTT CONSTRUCTION, INC.,

SUNSET POINT PARTNERSHIP,

DANIEL AVERILL, ET AL., as PARTNERS

OF SUNSET POINTS and INDIVIDUALLY,

ET AL.,

Defendants and Respondents.

APPEAL FROM: District Court of the Eleventh Judicial District,

In and for the County of Flathead,

The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Christopher A. Widenhofer and Raymond P. Tipp, Tipp & Buley,

Missoula, Montana

For Respondents:

Daniel W. Hileman, Kaufman, Vidal & Hileman, P.C., Kalispell, Montana

Charles L. Hash, Hash, O'Brien & Bartlett, Kalispell, Montana

J. Michael Young, Ugrin, Alexander, Zadick & Higgins, P.C.,

Great Falls, Montana

Submitted on Briefs: July 20, 2000

Decided: December 21, 2000

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Kevin Petri, d/b/a All Purpose Services ("Petri") appeals from the Order and Rationale issued by the Eleventh Judicial District Court, Flathead County, granting summary judgment in favor of the Respondents. Petri contends that the District Court erred when it granted summary judgment. We affirm.

## BACKGROUND

¶3 The instant dispute stems from two construction liens filed by Petri. On April 7, 1992, Petri entered into a subcontract with James Talcott Construction, Inc. ("Talcott") to perform all stucco, painting, and dry-walling on a construction project known as the Sunset Point Condominiums in Bigfork, Montana. Talcott was the general contractor for the project. Petri filed a construction lien dated February 14, 1993, against the real property on which the condominium project was located, in the amount of $63,647.53. On

February 26, 1993, Talcott filed a Release of Lien Bond (hereinafter referred to as a "substitution bond"). The District Court approved Talcott's substitution bond on March 3, 1993, stating that there was "no objection submitted." Petri subsequently filed a second construction lien dated September 9, 1993, in the amount of $77,762.75. This construction lien included amounts claimed under Petri's first lien.

¶4 On September 14, 1994, Petri filed a complaint against Talcott and the owners of the Sunset Point Project ("Respondents") claiming that they owed $77,762.75 for construction work and materials provided by Petri and seeking to foreclose on his second construction lien. Approximately a year later, Petri filed a separate complaint against Respondent Talcott and Safeco Insurance Company seeking the same amount as in the previous complaint. In the second action, Petri alleged that he was entitled to recover against Talcott's substitution bond.

¶5 On January 18, 1996, Respondent Daniel Averill, one of the owners of the Sunset Point Project, moved for summary judgment on Petri's first complaint and the subject of this appeal, the lien-foreclosure action, contending that Talcott's substitution bond had discharged Petri's construction lien and, therefore, Petri was barred from seeking foreclosure. In response, Petri claimed that summary judgment was improper because genuine issues of fact existed regarding whether the bond filed by Talcott complied with the statutory requirements as described in § 71-3-551, MCA. Petri also filed a motion to consolidate the two actions, which the District Court denied. On January 13, 2000, the court granted summary judgment in favor of the Respondents and dismissed Petri's lien-foreclosure action. Petri appeals.

## STANDARD OF REVIEW

¶6 We review a district court order granting summary judgment *de novo* applying the same evaluation as the district court pursuant to Rule 56, M.R.Civ.P. *See Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. In *Bruner*, we set forth our inquiry:

The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the

legal determinations made by a district court as to whether the court erred.

*Bruner*, 272 Mont. at 264-65, 900 P.2d at 903 (citations omitted).

## DISCUSSION

¶7 Whether the District Court erred when it granted summary judgment in favor of the Respondents?

¶8 The District Court dismissed Petri's foreclosure action on his second construction lien for two reasons. The court concluded that Talcott's substitution bond released Petri's first construction lien. The court determined that Petri's "subsequent attempt to raise [the amount of] the lien [by filing a second construction lien] is wholly deficient" because the second lien was filed after Talcott filed its bond and because the lien "was never recorded . . . and no notice thereof was ever sent."

¶9 Petri argues that the District Court erred when it concluded that his second construction lien was unenforceable. Petri maintains that the Talcott's substitution bond was improperly filed and does not affect the validity of his lien. Petri contends that Talcott is not statutorily authorized to file a substitution bond because it is not a "contracting owner" of the Sunset Point Condominium project. Petri also insists that the issue of whether his second construction lien was properly recorded and whether notice of it was properly served was not raised by Respondents as grounds for summary judgment.

¶10 The Respondents contend that Petri acquiesced in Talcott's filing of its substitution bond by bringing a separate claim on the bond and thus Petri can no longer contest its validity. Alternatively, the Respondents maintain that Talcott was statutorily authorized to file a substitution bond and that bond filing prevented Petri from filing a subsequent lien. Lastly, the Respondents admit that the District Court's conclusion that the second lien was not sent to the owners is incorrect. They maintain, however, that Petri failed to file a notice of a right to claim a lien pursuant to § 71-3-531, MCA, and that, therefore, the court's award of summary judgment in their favor is correct.

A. Whether Talcott's substitution bond invalidates Petri's second construction lien?

¶11 Pursuant to Montana's construction lien statutes, a person who furnishes services or materials pursuant to a real estate improvement contract may claim a construction lien to

secure the payment of the contract price. Section 71-3-523, MCA. The "contracting owner of any interest in such property, whether legal or beneficial," against which a construction lien has been filed may post a substitution bond. Section 71-3-551, MCA. "Contracting owner" is defined as "a person who owns an interest in real estate and who, personally or through an agent, enters into an express or implied contract for the improvement of the real estate." Section 71-3-522(4)(a), MCA. Upon filing the substitution bond, the lien against the real property shall forthwith be discharged and released in full. Section 71-3-552, MCA.

¶12 The Respondents argue that the category of entities authorized to file substitution bonds should be broadly construed to include Talcott. The Respondents point out that the authority to file a substitution bond is not limited to "contracting owners," but rather includes "contracting owners of any interest in such property, whether legal or beneficial." They further point out that when this court interprets a statute, its objective is to implement the intent the legislature sought to achieve. *See* § 1-2-102, MCA. Respondents contend that the purpose of a substitution bond is to facilitate the transfer of property by allowing for the dissolution of a lien while ensuring the continued existence of assets out of which a prevailing lien holder may satisfy its claim. *See Hutnik v. U.S. Fidelity & Guar. Co.* (Cal. 1988), 763 P.2d 1326, 1330; s*ee also* 53 Am. Jur. 2d, Mechanics' Liens, § 313 (1996).

¶13 Petri contends that pursuant to our decision in *Swain v. Battershell*, 1999 MT 101, 294 Mont. 282, 983 P.2d 873, the definition of contracting owner should be narrowly construed to exclude Talcott. Petri observes that in *Swain* we held that a construction lien which named the general contractor as the contracting owner, and not the actual owner as required by § 71-3-535(3)(c), MCA, was invalid. *Swain*, ¶ 27. Petri maintains that the current situation is sufficiently analogous to *Swain* to require a reversal of the court's decision that Talcott's substitution bond was valid.

¶14 Although we agree with much of Respondents' reasoning, we refuse to interpret the phrase "contracting owner of any interest in such property, whether legal or beneficial," to include a contractor who does not actually own an interest in the property at issue. To accomplish this requires a legislative amendment of § 71-3-551, MCA. We have consistently held that the procedural requirements of the construction lien statutes will be strictly construed. *Swain*, ¶ 26. A general contractor is not a contracting owner. *See* § 71-3-522(4)(a), MCA (defining a "contracting owner" as "a person who owns an interest in real estate"). No doubt § 71-3-551, MCA, should be amended to include a contractor as a

person or entity authorized to file a substitution bond. Allowing general contractors to file substitution bonds will free real estate from encumbrances while at the same time protect the valid claims of lienholders. As long as the bond complies with all statutory requirements-for example, that it be in an amount 1 ½ times the amount of the lien and in cash or written by a corporate surety company-the lienholder's rights will remain adequately protected.

¶15 Respondents refer us to *Henry F. Raab Connecticut, Inc. v. J.W. Fisher Co.* (Conn. 1981), 438 A.2d 834, in which the Supreme Court of Connecticut allowed a subcontractor to file a substitution bond pursuant to a Connecticut statute which authorized "the owner of such real estate, *or any person interested therein*" to file a bond. *Raab*, 438 A.2d at 835, n.1 (emphasis added). The court determined that the subcontractor who had filed the bond was "interested" in the property because the general contractor on the project was withholding monies from that subcontractor as a result of another subcontractor's lien. *Raab*, 438 A.2d at 838. The language of our substitution bond statute is not capable of a similar construction. Rather, it is limited to actual owners of a legal or beneficial interest in the property and does not include all persons "interested" in the property.

¶16 We agree, however, with the Respondent's contention that Petri acquiesced in Talcott's substitution bond filing. By filing a subsequent action on the substitution bond, Petri acquiesced in Talcott's bond filing and can no longer object to its validity. Petri's acquiescence in Talcott's substitution bond, however, does not necessarily invalidate his filing of a subsequent construction lien. The substitution bond filed by Talcott only released the property from the claims underlying Petri's first lien; it did not guarantee or release any subsequent claims. *See* § 71-3-552, MCA.

¶17 The deficiency of Petri's second lien, at least in this regard, is not that it was filed after Talcott's substitution bond, but rather that Petri's second lien covers claims already guaranteed and released by that bond.[(1)] Allowing a subcontractor to file subsequent liens based on claims which have already been released by way of substitution bond would negate the legislative purpose behind the substitution bond provisions. Property could not be freed from an encumbrance by way of a substitution bond if parties were allowed to simply file subsequent liens reasserting the same claim. We have consistently held that the procedural requirements of construction lien statutes will be strictly construed. *Swain*, ¶ 26. Accordingly, in order to effectuate the purpose of the substitution bond provisions, we will strictly construe the requirement that a lien contain a statement of the "amount unpaid." *See* § 71-3-535(3)(f), MCA (requiring a lien contain a statement of "the amount

unpaid for services or materials"); *see also* § 71-3-526, MCA ("Amount of lien"). The statement of the amount unpaid may not include claims for amounts already guaranteed by a substitution bond. Those amounts, if lawfully due the lien-holder, are no longer "unpaid" in that payment is guaranteed by the substitution bond. We refuse, however, to hold that Petri's second lien is invalid because his statement of amounts unpaid is incorrect. This is an argument Respondents should have raised, but did not, in their briefs supporting summary judgment filed with the District Court.

> B. Whether Petri's second construction lien is invalid because he failed to comply with the necessary procedural requirements?

¶18 We conclude that Petri's second construction lien is invalid because he failed to file a notice of right to claim a construction lien as required by § 71-3-531, MCA, or submit proof that he fell within one of the exceptions to this requirement. Therefore, we conclude that the District Court correctly granted summary judgement in favor of the Respondents.

¶19 As a preliminary matter, we have searched the record and have found no evidence that the Respondents ever contended that Petri's second construction lien was invalid because it was not properly recorded or because notice of it was never sent. In fact, Petri has attached a copy of his second construction lien to his Reply Brief which appears to have been properly recorded by the Flathead County Clerk and Recorder. Furthermore, the Respondents Dan Averill and Sunset Point Partnership acknowledge that they did receive notice of Petri's second construction lien. The court's conclusion that Petri's second lien is invalid because it was not properly recorded and because notice of it was never sent is erroneous. These issues were not before the court as the Respondents never presented them as bases for summary judgment. *See Kenyon v. Stillwater County* (1992), 254 Mont. 142, 149, 835 P.2d 742, 746-47, *overruled on other grounds* by *Heiat v. Eastern Montana College* (1996), 275 Mont. 322, 912 P.2d 787.

¶20 The issue properly before the District Court, as stated in Talcott's brief in support of summary judgment filed on February 12, 1996, was whether Petri failed to file a notice of a right to claim a lien as required by § 71-3-531, MCA. This provision requires that a person who may claim a construction lien give notice of the right to claim a lien to the contracting owner unless that person fits within one of the statutory exceptions. Section 71-3-531(1) and (2), MCA. A person may not claim a construction lien unless the person has given notice of the right to claim a lien. Section 71-3-531(5), MCA.

¶21 Petri failed to carry his burden of proving that material issues of fact existed with regard to his compliance with these provisions. Petri did not come forward with any evidence that he complied with the statutory requirement to give notice of his right to claim a lien nor did he present evidence which would tend to indicate that he fell within one of the exceptions to this requirement. Accordingly, pursuant to § 71-3-531(5), MCA, Petri's second construction lien is invalid.

¶22 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

1. The first lien claims monies due for labor, materials, or equipment supplied from April 7, 1992, to January 25, 1993. As we concluded above, Talcott's substitution bond has released the property from these claims. The second lien includes claims covered by the discharged first lien, claiming monies due for labor, materials, or equipment supplied between April 7, 1992, and June 15, 1993. Petri admits in his Reply Brief that the second lien encompasses claims brought in his first lien.