No. 05-703

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 99

SHAWN JOHNSTON and STEVE JOHNSTON,
d/b/a AFM CONTRACTING,

        Plaintiffs and Respondents,

   v.

M. STACEY PALMER,

        Defendant and Appellant.

APPEAL FROM:    The District Court of the Eighteenth Judicial District,
                In and For the County of Gallatin, Cause No. DV 2001-390,
                Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Terry F. Schaplow, Terry F. Schaplow, P.C., Bozeman, Montana

        For Respondents:

        Robert J. Quinn, Attorney at Law, Bozeman, Montana

                    Submitted on Briefs:  November 9, 2006

                    Decided:  April 24, 2007

Filed:

                            Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 California resident M. Stacey Palmer (Palmer) owns real property in Gallatin County, Montana. In 2000 she embarked on a project to develop, improve and subdivide her property. In the fall of 2000 AFM Contracting (AFM) was asked to submit a bid request to perform underground infrastructure work, i.e., installation of water, drain and sewer systems. AFM submitted its bid and Palmer accepted it. AFM completed approximately $169,000.00 worth of work before disputes arose resulting in Palmer evicting them from the job site in June 2001. After Palmer refused to pay AFM's invoice for services performed, AFM filed a construction lien on Palmer's property and subsequently filed its Complaint.

¶2 The District Court for the Eighteenth Judicial District, Gallatin County, held a bench trial in April 2005. Following the trial's conclusion, it ordered Palmer to pay AFM $162,525.26 plus prejudgment interest at a rate of 18% per annum dating from the date the construction lien was filed. It also ordered Palmer to pay AFM's attorney fees and costs. Palmer appeals several rulings of the District Court. We affirm and remand to the District Court for a determination of AFM's reasonable attorney fees and costs incurred on appeal.

**ISSUES**

¶3 A restatement of Palmer's issues on appeal is:

¶4 Did the District Court abuse its discretion in denying Palmer's motion to file a second amended answer?

¶5 Did the District Court err in finding that AFM's construction lien was valid?

2

¶6     Did the District Court err in finding that Palmer had breached AFM's contract?

¶7     Did the District Court err in awarding prejudgment interest at 18% per annum?

## FACTUAL AND PROCEDURAL BACKGROUND

¶8     In 1995 Palmer purchased 23 lots contained in Blocks 8, 9 and 10 of the Buttelman Addition to the Town of Three Forks, Montana (the Property). At the time of purchase, Palmer intended to establish a partnership with Gary Perren (Perren), a Montana resident, and develop the Property for residential housing. Beginning in 1996 Palmer worked extensively with the City of Three Forks (City) to have the Property rezoned for residential use and to have "Kentucky Street," a city street included on a plat design, abandoned in favor of her use. She also commenced efforts to reconfigure the Property from 23 to 29 lots.

¶9     Palmer and Perren entered into a partnership agreement in October 1996. Under the agreement, in addition to other responsibilities, Perren was to act as Palmer's local representative for on-site decisions and interaction with contractors.

¶10     In July 1998 Palmer established the M. Stacey Palmer Profit Sharing Plan & Trust (the Trust) funding it with monies from her former employment-related retirement account. She designated herself as Trustee. It is undisputed that Palmer's Trust is not registered or licensed to do business in Montana, nor does it meet the requirements of § 35-5-201, MCA, which sets forth the steps a business trust must take before conducting business in Montana.

¶11     At some time before August 1998, Palmer hired C & H Engineering (C & H) to provide various short- and longer-term engineering services. C & H's early services were

3

to assist her with her dealings with the City of Three Forks; its later services were to aid Palmer's development of the Property.

¶12    In September 1998 the City notified Palmer that her Property had been rezoned for residential use, and in November 1999 the City certified approval of a plat design reconfiguring the Property to 29 lots.  The City declined to abandon Kentucky Street at that time but ultimately abandoned it in June 2001.

¶13    In February 2000 C & H created a detailed Bid Package for construction of water, sewer, road and drainage facilities for the Property (Bid Package).  Subsequently, in September 2000 AFM submitted a $166,260.60 bid on Bid Form 00300 to Palmer to perform the water, sewer and drainage services outlined in the Bid Package.  The Bid Form indicated that if AFM's bid was accepted, it would enter into an agreement with Palmer, utilizing an agreement form included in the Bid Package.

¶14    During the fall of 2000 Perren had between 25,000 and 50,000 yards of fill dirt placed on the Property.  Perren testified that some of the dirt was to be used to raise portions of Palmer's Property above the flood plain.

¶15    On March 12, 2001, Palmer revised the Bid Form she had received from AFM by adding two line items.  The first line item instructed AFM to "write up and propose a contract for agreement by parties."  The second line item indicated that if Kentucky Street was abandoned by the City, the quote for services would be amended accordingly. She then returned the bid form to AFM.

¶16    In late March 2001 Palmer, as Trustee of her Trust, executed and transmitted three documents to C & H—a "Notice of Award" indicating that AFM had been awarded the

contract; a "Notice to Proceed" instructing AFM to proceed with the project on April 10, 2001; and a Section 00500 Agreement Form setting forth the terms and conditions between the Palmer Trust and AFM Contracting. The Section 00500 Agreement was signed by Palmer as Trustee. C & H delivered the documents to AFM. It is undisputed that AFM did not sign the Section 00500 Agreement.

¶17　According to the testimony of one of AFM's owners, Perren told him that Palmer was confused by language in the Section 00500 Agreement. As a result, on April 13, 2001, AFM sent by facsimile a memorandum to Palmer enumerating six specific contract terms and providing a break-down of the bid estimate totals for water, sewer and storm services. The memorandum also specified payment conditions of "30 days net 1.5% on everything unpaid after 30 days plus any cost incurred to collect past due amount." AFM intended this simpler document to replace the Section 00500 Agreement. Palmer made handwritten revisions to the memorandum, signed it on behalf of her Trust, and returned it to AFM on April 24. After receiving the signed memorandum, AFM ordered the required materials.

¶18　AFM testified that before it began work on the site, it told Perren that the pile of dirt on Palmer's Property would hinder its completion of the project because some of the dirt was on a portion of the Property that was to be improved.

¶19　AFM began work on the project early in May 2001. Around June 1 it had completed as much of the work that could be done without removing the pile of fill dirt. At that time, Perren and C & H designated the completed work as "Phase I." AFM consented to the project phasing and agreed to return and complete the remaining work,

designated as "Phase II," once the dirt pile was removed. AFM agreed to do this at the original contract price.

¶20 On May 31, 2001, AFM contacted Palmer, told her the work was nearing completion and requested payment of the scheduled progress payment of $30,000.00. Palmer informed AFM that she had the money for the scheduled payment but was concerned about ambiguities in the contract that she believed required resolution before she made the payment. It is undisputed that Palmer never made that progress payment or any other payment.

¶21 On June 5 Palmer sent a letter by facsimile to AFM, C & H and the City, contending that the Palmer Trust's contract with AFM was defective. She advised that any additional work performed at the site by AFM would be at AFM's risk. AFM promptly replied with a handwritten explanation of the work completed, the cost of such work, and the work yet to be done. Palmer responded by faxing a "Notification of Breach of Contract" to AFM. Around this same time, the City of Three Forks inspected and tested the work done by AFM, and accepted it without identifying any defects with the materials or labor.

¶22 On or about June 7, 2001, AFM delivered an invoice to Palmer representing the cost of the work performed and the materials used to complete Phase I. The total was $162,525.26. Palmer did not pay AFM's invoice. As a result, on July 13, 2001, within ninety days of final furnishing of services and materials, AFM filed a Construction Lien on the Property for $164,224.56 ($162,525.26 plus accrued interest to that date). It subsequently filed its Complaint on October 11, 2001.

¶23    Palmer answered the Complaint on December 6, 2001. In early February 2002 Palmer's first attorney withdrew from the case and moved for substitution of counsel. On February 19, 2002, via her second attorney, Palmer moved to amend her answer. Her motion was granted and she filed her First Amended Answer and Counterclaim on March 19, 2002. After attempts at discovery were ostensibly frustrated by Palmer, AFM filed motions to compel Palmer to respond to interrogatories and requests for admissions and production. On August 5, 2002, Palmer's second attorney was allowed to withdraw. Also on August 5, 2002, AFM moved for summary judgment. Subsequently, Palmer's third attorney appeared in the case on September 13, 2002, and thereafter filed motions to continue pretrial deadlines and revise scheduling orders. On December 20, 2002, Palmer moved for leave to file a second amended answer, counterclaim and third party complaint. On January 9, 2003, after AFM had opposed the motion, the District Court denied it.

¶24    A bench trial was held on April 26 and 27, 2005. On September 8, 2005, the District Court held that AFM's construction lien was valid and that Palmer had breached the contract with AFM. It ordered her to pay $162,525.26 plus prejudgment interest beginning on July 13, 2001, as well as attorney fees and costs. The court then entered Judgment on September 27, at which time it revised the amount Palmer was ordered to pay to $160,655.43 plus prejudgment interest at the rate of 18% per annum beginning on July 16, 2001, and ending on September 8, 2005. Palmer appeals. We affirm and remand.

## STANDARD OF REVIEW

¶25 We review the granting or denial of a motion to amend a pleading for an abuse of discretion. *Denton v. First Interstate Bank of Commerce*, 2006 MT 193, ¶ 17, 333 Mont. 169, ¶ 17, 142 P.3d 797, ¶ 17 (citation omitted). An abuse of discretion occurs only if the district court "acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *State v. Hendershot*, 2007 MT 49, ¶ 19, 336 Mont, 164, ¶ 19, ___ P.3d ___, ¶ 19 (citation omitted).

¶26 We review a district court's findings of fact to determine if they are clearly erroneous. A district court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the district court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with a definite and firm conviction that a mistake has been made. Substantial evidence is "evidence that a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Rossi v. Pawiroredjo*, 2004 MT 39, ¶ 12, 320 Mont. 63, ¶ 12, 85 P.3d 776, ¶ 12 (internal citations omitted). We review a district court's conclusions of law de novo to determine whether they are correct. *Rossi*, ¶ 13. We apply these standards to both the District Court's ruling on the validity of AFM's construction lien and to its determination that Palmer breached her contract with AFM. *See Burns v. A Cash Const. Lien Bond*, 2000 MT 233, ¶ 6, 301 Mont. 304, ¶ 6, 8 P.3d 795, ¶ 6, and *Cut Bank School Dist. No. 15 v. Rummel*, 2002 MT 248, ¶ 5, 312 Mont. 143, ¶ 5, 58 P.3d 159, ¶ 5 (citations omitted).

¶27 Lastly, a district court's award of prejudgment interest is a question of law; therefore, this Court determines whether the district court correctly applied the law. *James Talcott Const. v. P & D*, 2006 MT 188, ¶ 28, 333 Mont. 107, ¶ 28, 141 P.3d 1200, ¶ 28 (citation omitted).

## DISCUSSION

¶28 *Issue One: Did the District Court abuse its discretion in denying Palmer's motion to file a second amended answer?*

¶29 Palmer argues that the District Court abused its discretion when it denied her motion to file a second amended answer. However, the portion of her brief dedicated to this issue fails to comply with the most basic requirements of M. R. Civ. P. 23(a)(4). Other than a passing reference to M. R. Civ. P. 15(a), it is unsupported by authority, is neither succinct nor clear, misrepresents the testimony cited to in the record, relies on exhibits not contained in the record, and contains numerous conclusory assertions.

¶30 As we have stated on numerous occasions, relying on M. R. App. P. 23, it is not this Court's obligation to conduct legal research on behalf of a party, to guess at his or her precise position, or to develop legal analysis that may lend support to that position. *In re Estate of Bayers*, 1999 MT 154, ¶ 19, 295 Mont. 89, ¶ 19, 983 P.2d 339, ¶ 19. *See also Hallenberg v. General Mills Operations,* 2006 MT 191, ¶ 45, 333 Mont. 143, ¶ 45, 141 P.3d 1216, ¶ 45. However, given that the District Court's Order denying her motion to amend succinctly sets forth the court's rationale, we will review the court's justification for denying the motion to determine whether the court abused its discretion.

9

¶31 The court noted: (1) Palmer waited nine months to file a motion for leave to file a second amended answer; (2) AFM had filed a motion for summary judgment and to compel Palmer's discovery responses at least three months before Palmer moved to amend; (3) Palmer did not present any new evidence that was not available to her at the time she amended her answer the first time; (4) all previous extensions had been for the sole benefit of Palmer; (5) granting the motion to amend would result in undue delay; (6) if Palmer had obtained "new evidence" in July 2002, she did not act promptly upon making that discovery; and (7) allowing a second amendment would impede the orderly and expeditious progression of the case to final judgment. We conclude that the rationale of the court was well-reasoned and appropriate given the case's procedural history, and that the court did not abuse its discretion in denying leave to amend. See *Peuse v. Malkuch*, 275 Mont. 221, 228, 911 P.2d 1153, 1157 (1996) (court was within its discretion in denying leave to amend after a motion for summary judgment had been filed by the opposing party). We therefore affirm on this issue.

¶32 *Issue Two: Did the District Court err in finding that AFM's construction lien was valid?*

¶33 Palmer claims the lien contained multiple defects and that the District Court erred in failing to expressly address each of the alleged defects in its ruling. She also maintains that the court's findings and conclusions pertaining to the validity of the lien were incorrect and should be reversed. In response, and acknowledging that our case law requires that the procedural requirements for construction liens be strictly followed, AFM asserts that once the procedure has been fulfilled, the statutes will be liberally construed

10

so as to give effect to the remedial nature of the lien statutes. *Simkins-Hallin Lumber Co. v. Simonson*, 214 Mont. 36, 39, 692 P.2d 424, 425 (1984). AFM maintains that it strictly adhered to the procedural requisites of the lien statutes, and that the District Court rendered correct findings on all issues pertaining to the validity of the lien.

¶34 The District Court found that the procedural requirements of § 71-3-535, MCA, were met in that the lien (1) was timely filed and served on Palmer; (2) listed AFM's name and address as claimant; (3) contained a "reasonably sufficient" description of the property; (4) named Palmer as the contracting owner and owner of the Property; (5) contained a description of the services and materials provided and the dates such services/materials were first and last furnished; (6) showed a reasonable estimation of the amount of unpaid services/materials owed to AFM; and (7) contained an explanation for why a notice of right to claim a lien was not required. Based on these findings, the District Court concluded that the lien complied with the statutory procedural requirements found in §§ 71-3-534 and 535, MCA.

¶35 The lien statutes or statutory provisions relevant to our analysis are:

Section 71-3-523, MCA:
A person who furnishes services or materials pursuant to a real estate improvement contract may claim a construction lien, only to the extent provided in this part, to secure the payment of his contract price.

Section 71-3-534(2), MCA:
The [county] clerk may not file [a] lien unless it is accompanied by a certification by the lien claimant or the claimant's agent that a copy of the lien has been served upon each owner of record of the property named in the lien. . . .

Section 71-3-535, MCA:

11

(1) A person's lien does not attach and may not be enforced unless, after entering into the contract under which the lien arises, the person has filed a lien not later than 90 days after:
(a) he person's final furnishing of services or materials; or
. . . .
(2)(a) The lien must be filed with the county clerk and recorder of the county in which the improved real estate is located, and the county clerk and recorder may allow the lien to be filed electronically.
(b) The person claiming the lien shall certify to the county clerk and recorder that a copy of the lien has been served on the owner of record as provided in 71-3-534(2).
(3) The lien statement must contain:
(a) the name and address of the person claiming the lien;
(b) a description of the real property against which the lien is claimed sufficient to identify it;
(c) the name of the contracting owner;
(d) the name and address of the party with whom the person claiming the lien contracted to furnish services or materials;
(e) a description of the services or materials provided;
(f) the amount unpaid for services or materials or, if no amount is fixed by the contract, a good faith estimate of the amount unpaid, designated as an estimate;
(g)(i) the date on which the services or materials were first furnished; and
(ii) the date on which the services or materials were last furnished; and
(h) a declaration that a notice of a right to claim a lien was given to the contracting owner or an explanation of why the notice was not required.

¶36 Palmer argues that AFM's lien was defective because: (1) the absence of a written contract under § 71-3-523, MCA, precludes AFM from claiming a construction lien; (2) AFM failed to serve the lien on the City, as the owner of record of "Kentucky Street," and therefore its lien is invalid under §§ 71-3-534(2) and 535(2)(b), MCA; (3) the lien inadequately described the property improved as required by § 71-3-535(3)(b); (4) the lien incorrectly named the "person" entering into the contract in violation of § 71-3-535(3)(c), MCA; (5) the lien incorrectly identified who requested the work; and (6) the

12

lien's statement that a notice of right to claim was not required under § 71-3-531, MCA, was incorrect.

¶37 Palmer appears to argue that because AFM failed to sign the Section 00500 Agreement, no meeting of the minds occurred and therefore no contract existed. However, Palmer once again fails to provide any substantive legal authority or analysis for her argument. Rather, she makes conclusory statements and offers transcript quotations that are misleading and taken out of context. AFM maintains that a contract did exist between the parties and that under *Maxwell v. Anderson*, 181 Mont. 215, 220, 593 P.2d 29, 32 (1979), whether such an agreement is "written, oral, express or implied," it nonetheless supports a construction lien.

¶38 The District Court determined that a contract existed between Palmer and AFM. Section 28-2-102, MCA, requires (1) identifiable parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration. The court reviewed multiple contract-related documents generated and exchanged between the parties and concluded that while not all of the documents were signed by both parties, some were. The court noted also that Palmer testified that a contract existed, that she asked for and wanted the work done by AFM, and that she intended to pay them for their work. Whether or not a contract exists is a combined issue of fact and law. *Austin v. Cash*, 274 Mont. 54, 59, 906 P.2d 669, 672 (1995). The court's findings of fact pertaining to the existence of a contract are supported by substantial credible evidence and therefore are not clearly erroneous. Its conclusion of law, based on these facts, is correct as well.

13

¶39    Palmer also claims that AFM's lien is invalid under §§ 71-3-534(2) and 535(2)(b), MCA, because AFM failed to serve the lien on the City, as the owner of record of "Kentucky Street."  While the District Court did not address this alleged defect, we are not persuaded by Palmer's claim.  AFM's construction lien describes the real property subject to the lien as:

> Lots 1A, 2A, 3A, 4A, 5A, 6A, 7A, 8A and 9A of Block 8A; Lots 1A, 2A, 3A, 4A, 5A, 6A, 7A, and 8A of Block 9A; Lots 1A, 2A, 3A, 4A, 5A, 6A, 7A, 8A, 9A, 10A, 11A, and 12A of Block 10A, . . . formally known as Block 8, 9 and 10 of the Buttleman Addition to the Town of Three Forks, Montana . . . .

It is undisputed that Palmer owns this Property and that it is on this Property that AFM performed work requested by Palmer.  While the City of Three Forks may have had an ownership or easement interest in the strip of land designated as the future location of "Kentucky Street," the evidence appears to support the conclusion that the City abandoned that interest in favor of Palmer before AFM's lien was filed.  As a result, AFM served the only "owner of record of the property named in the lien."

¶40    Palmer also challenges the property description because it fails to refer to "Kentucky Street" and fails to reflect that the final configuration of the parcel contained 31 lots rather than the 29 identified in the lien.  We conclude, however, that AFM's description of the property subject to the lien "was sufficient to identify it."  Presumably the property as described in the lien encompasses the entire "footprint" of Palmer's property, whether it is configured as 29 lots or 31.  As we held in *Swain v. Battershell*, 1999 MT 101, ¶ 26, 294 Mont. 282, ¶ 26, 983 P.2d 873, ¶ 26, the procedural requirements exist to notify the owner of real property that a lien has been filed against

14

his or her property, and to protect all parties dealing with the property, including subsequent purchasers. We conclude that AFM's lien property description adequately does so. As we also stated in *Swain*, ¶ 26, we will strictly construe the procedural requirements of the construction lien statutes, but once the procedure has been fulfilled, we will liberally construe the statutes so as to give effect to their remedial purpose.

¶41 Next, Palmer maintains that the lien incorrectly named her rather than the Palmer Trust as the person entering into the contract and requesting the work. The District Court found that there was "little, if any, appreciable difference between Palmer and the Trust." The record supports the court's finding. Palmer was the sole trustor, beneficiary, and trustee. She made all the decisions with regards to the management, direction, and purpose of the Trust. The court also concluded, as a matter of law, that Palmer ratified any agreements that may have existed between the Trust and AFM when she accepted the benefits AFM bestowed upon the land she owned. Moreover, the District Court concluded that Palmer's Trust was not authorized to transact business in Montana under § 35-5-201, MCA.

¶42 Section 35-5-201, MCA, establishes the process by which a "foreign" (any trust not organized under Montana laws) business trust becomes licensed to do business in the State of Montana. Its requirements are precise and detailed. However, there is no need to set forth the statute's requirements here, as it is undisputed that Palmer's Trust did not comply with any of the requirements of the applicable statute. The record supports the District Court's findings and conclusion that the Palmer Trust was not authorized to

15

conduct business in the State of Montana. This being so, the District Court did not err in concluding that it was Palmer who entered into the contract and requested the work.

¶43 Lastly, Palmer argues that the lien's statement indicating that "no notice of right to claim a lien was required to be given pursuant to Section 71-3-531(a), because services and materials were furnished directly to the owner at his/her/its request" was incorrect because the City was not served. As we held earlier, there is no evidence in the record that "Kentucky Street" was owned by the City at the time the lien was filed, and therefore no service of the lien to the City was necessary.

¶44 For the foregoing reasons, we conclude that the District Court's findings vis-à-vis the validity of AFM's lien were supported by the evidence and its legal conclusions based on these findings are not incorrect.

¶45 *Issue Three: Did the District Court err in finding that Palmer had breached AFM's contract?*

¶46 As we note above, the District Court's conclusion that a contract existed between Palmer and AFM was not erroneous. Therefore, we now address whether the court's determination that Palmer breached the contract was correct. Again, Palmer's argument on appeal lacks legal authority or analysis. She argues that no contract existed and outlines the ways in which she perceives AFM "reneged on their obligations."

¶47 The District Court's rationale in concluding that Palmer breached the contract is simple—"Palmer breached the contract with AFM by failing to pay AFM for the work performed." The court also determined that Palmer had failed to meet her burden of

16

proof that AFM had breached the contract, trespassed on her property and caused her emotional distress.

¶48 The District Court heard significant testimony regarding Palmer's plans to develop this Property. Evidence was presented that Palmer, or Perren on Palmer's behalf, sought a bid from AFM to perform services. It is undisputed that Palmer notified AFM that she accepted its bid and it should proceed with the work. She told the court that she wanted the services, intended to pay for them and had the money to do so. She testified that she offered to pay the scheduled progress payment at the conclusion of the work but she wished to resolve a few contract concerns first. It is further undisputed that, despite knowing the work to be substantially complete, Palmer refused to pay AFM. AFM argued to the District Court that this constituted a breach of the agreement between the parties and resulted in unjust enrichment of Palmer.

¶49 Based on the District Court's finding that AFM and Palmer both desired that the project commence with a price certain and a firm completion date, and that Palmer benefited from the labor and materials expended by AFM in its effort to complete the project, the court's conclusion that Palmer breached the contract by failing to pay the agreed-upon price is not incorrect. Additionally, the court specifically determined that the amount billed by AFM for the work performed was in accordance with its contract bid and was reasonable and competitive. We therefore affirm the court on this issue.

¶50 *Issue Four: Did the District Court err in awarding prejudgment interest at 18% per annum?*

17

¶51 The District Court, without explanation or analysis, awarded AFM 18% prejudgment interest on the amount of damages it claimed. Palmer relies solely upon § 31-1-107, MCA, to support her claim that 18% interest exceeds the amount lawfully allowed and is usurious. However, Palmer's reliance on § 31-1-107, MCA, is misplaced. Title 31, Part 1 of the MCA specifically addresses interest rates associated with loans of money. The interest rate awarded by the District Court in the case before us is not for a loan of money but rather is premised upon a contractually-agreed upon finance charge owed on the balance of funds due and unpaid after thirty days.

¶52 One of the documents signed by both parties during contract development was a simple memorandum on AFM letterhead setting forth six easily understood terms. The sixth and last term stated in relevant part:

> Payment Conditions:
> 30 days net 1.5% on everything unpaid after 30 days plus any cost incurred to collect past due amount. We will deduct 10% off if paid within 10 working days after City of Three Forks final approval.

Palmer made a hand-written revision to these payment conditions essentially seeking the 10% offered reduction in the event she paid at least 80% of the outstanding balance within ten days after the City's final approval. She did not challenge the 1.5% per month interest (i.e., 18% per annum), nor did she attempt to negotiate a lower interest rate. As noted above, both she and AFM signed this document.

¶53 AFM directs us to *E.C.A. Environ. Management v. Toenyes*, 208 Mont. 336, 679 P.2d 213 (1984). There, the District Court concluded that a fuel bill provision allowing

18

18% interest on unpaid balances more than thirty days old was usurious and awarded 6% interest. On appeal, we reversed, stating:

> The fuel transaction was not a subterfuge devised to conceal what was in fact a loan. . . . Here, there was neither the intent to loan a sum of money nor the intent to extract usurious interest. Terra-Spread took possession of the goods without paying and received a significant benefit. For this benefit, the seller is justified in imposing an additional charge. The contractor on receiving the goods, signed and received an invoice that contained an agreement providing for charging an annual interest rate of 18 percent on balances more than thirty days old. Without more, this agreement constitutes a simple commercial charge agreement to which usury laws are inapplicable. *Empire Building Supply v. EKO Investments, Inc*. (1979), 40 Or.App. 739, 596 P.2d 593.

*E.C.A.,* 208 Mont. at 342, 679 P.2d at 216.

¶54 While factually distinguishable from the case before us, the analysis in *E.C.A.* is applicable. Palmer sought the services she received from AFM with the understanding that she would pay for these services. She signed an agreement, even modifying part of the agreement to her benefit, yet agreeing to 18% per annum interest on the unpaid balance. Under *E.C.A.*, this contractually-agreed upon rate is not usurious and the District Court did not err in awarding it.

¶55 Finally, as argued by AFM, under § 71-3-124(1), MCA, a successful lien claimant is entitled to recover attorney fees and costs incurred at trial and upon appeal. The statute provides:

> In an action to foreclose any of the liens provided for by part 3, 4, 5, 6, 8, or 10 of this chapter, the court shall allow as costs the money paid and attorney fees incurred for filing and recording the lien and reasonable attorney fees in the district and supreme courts. The costs and attorney fees must be allowed to each claimant whose lien is established, and the reasonable attorney fees must be allowed to the defendant against whose property a lien is claimed if the lien is not established.

19

As recognized above, AFM's lien was filed under Title 71, Chapter 3, Part 5, and therefore § 71-3-124(1), MCA, is applicable. AFM is therefore entitled to its reasonable attorney fees incurred in both the district court and this Court. Accordingly, we remand for a determination of AFM's reasonable costs and attorney fees incurred on appeal, pursuant to the requisites of *Plath v. Schonrock*, 2003 MT 21, ¶ 36, 314 Mont. 101, ¶ 36, 64 P.3d 984, ¶ 36.

## CONCLUSION

¶56    For the foregoing reasons, we affirm the District Court's Findings of Fact and Conclusions of Law and Judgment. We remand to the District Court for a determination of AFM's reasonable attorney fees and costs incurred on appeal.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS
/S/ JIM RICE