**H.I. CONSTRUCTION, LLC, Plaintiff**
**v.**
**BAY ISLES ASSOCIATES, LLLP f/k/a VIRGIN ISLANDS**
**ASSOCIATES, LLLP, Defendant**

Case No. ST-09-CV-0427

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

May 14, 2010

KATHRYN J. DePREE, ESQ., Law Office of Kathryn J. DePree, St. John, USVI, *For the Plaintiff.*

SIMONE R.D. FRANCIS, ESQ., Ogletree, Deakins, Nash, Smoak & Stewart, LLC, St. Thomas, USVI, *For the Defendant.*

CHRISTIAN, *Judge*

## MEMORANDUM OPINION

(May 14, 2010)

The above-captioned civil action is before the Court on Bay Isles Associates, LLLP's Emergency Motion to Partially Dissolve Construction Lien ("Motion to Dissolve Lien") which was filed with this Court on March 10, 2010. H.I. Construction, Inc. opposes said motion. On April 23, 2010, this Court convened an evidentiary hearing on the Motion to Dissolve Lien. Both parties have submitted proposed findings of fact and conclusions of law, and filed post-hearing submissions clarifying the ownership of certain condominium units which are affected by this litigation. For the reasons set forth below, the Motion to Dissolve Lien will be granted in part and denied in part.

## I. Factual background.

The facts below are based on the testimony adduced and the exhibits entered into evidence at the April 23, 2010, hearing. Defendant Bay Isles Associates, LLLP f/k/a Virgin Islands Associates, LLLP ("Bay Isles") is a Virgin Islands business entity and the developer of the condominium project known as Grande Bay Resort ("Grande Bay"), located on St. John, Virgin Islands. As part of the Grande Bay construction process, in January of 2007, Bay Isles entered into an agreement with Plaintiff H.I. Construction, Inc. ("HIC") to provide construction services at the Grande Bay site. Incredibly, notwithstanding the financial magnitude of the Grande Bay project, the agreement between Bay Isles and HIC was oral and never reduced to writing. The agreement between the parties was for

209

time and labor only, and HIC was not responsible for, and did not provide, materials for the project. The materials for the project were furnished via an entity called Breckenridge Construction, which is not a party to this litigation.

While Grande Bay was being constructed, Bay Isles dedicated the project to a condominium property regime by filing its Declaration of Condominium ("Declaration") with the Office of the Recorder of Deeds ("Recorder's Office") on September 13, 2007. The Declaration has been amended four times, with the appropriate documentation being filed with the Recorder's Office.[1] The Declaration expressly places Grande Bay under the provisions of the Virgin Islands Condominium Act. [Declaration, Section 2(n), p. 3]. Pursuant to the Declaration, the following parcels of real property were placed into the Grande Bay Condominium: 86-3, 86-4, 86A-3, 86A-4, 3Abc, and 3Aac, Cruz Bay Town, Cruz Bay Quarter, St. John, Virgin Islands. [Declaration, Exhibit A]. Uncontested testimony at the hearing revealed that Parcels 3Abc and 3Aac have since been combined into one lot known as Parcel 3ABC.

In accordance with the oral agreement between the parties, HIC provided construction services at the Grande Bay Condominiums from January, 2007 through July 15, 2009, when Bay Isles terminated the relationship. Both parties acknowledge that Bay Isles paid HIC for all services rendered, except for those services that were provided between June 26 and July 15, 2009. When payment for those services was not forthcoming from Bay Isles, on July 31, 2009, HIC filed a Notice of Claim of Construction Lien ("First Lien Notice") against all of the parcels dedicated to the Grande Bay Condominium, seeking payment in the amount of One Hundred Twenty Seven Thousand Three Hundred Thirty Two Dollars ($127,332.00). Attached to the First Lien Notice are three invoices which set forth the services provided by HIC, but for which Bay Isles has not tendered payment.

On September 18, 2009, HIC filed the above-captioned matter in this Court and filed a Notice of Commencement of Action Under Construction-Lien Act ("First Commencement of Action") with the Recorder's Office. On October 2, 2009, HIC filed a second Notice of

---

[1] The Declaration and its four amendments were admitted into evidence as Plaintiff's Exhibits 1 through 5, respectively, via a stipulation of parties at the April 23, 2010 hearing.

Claim of Construction Lien ("Second Lien Notice") with the Recorder's Office for the same amount, but this time asserting the lien against not only all of the parcels dedicated to the Grande Bay Condominium, but also several individually listed condominium units. The units listed on Exhibit A attached to the Second Lien Notice are "Amenities Unit, Commercial Unit 1, Commercial Unit 2, A-102, A-201, A-202, A-301, A-302, B-102, B-104, B-201, B-204, B-302, B-303, B-304, C-302, C-PO1, C-02/Rooftop Terrace, C-PO4/Rooftop Terrace, D-102, D-PO2/Rooftop Terrace, D-PO5, E-101, E-102, E-103, E-104, E-201, E-202, E-203, E-204, E-301, E-302, E-303, E-304, E-T1/Rooftop Terrace, EPO1, and EPO2." On the same date, HIC filed an Amended Notice of Commencement of Action Under Construction Lien Act ("Second Commencement of Action") with the Recorder's Office.[2] HIC did not release either the First Lien Notice or the First Commencement of Action when it recorded the Second Lien Notice and Second Commencement of Action. HIC also filed its Amended Complaint with this Court on October 2, 2009.[3]

At the April 23, 2010 hearing, the controversy centered on precisely which areas of the Grande Bay project HIC performed services between June 26 and July 15, 2009. It is clear from the testimony, and Bay Isles concedes, that HIC performed services in and around the Administration Building and Building E. This is borne out by the attachments to the First Lien Notice. It also was not disputed that the Administration Building, also referred to as the Reception Building[4] and Building E are located on Parcel 3ABC. However, no one could state with certainty where upon Parcels 86-3, 86-4, 86A-3, 86A-4, Buildings A, B, C, and D are located. Further, there was disagreement on the location of a safety fence, which was removed, at least in part, by HIC as part of the contraction services it rendered during the pertinent timeframe. This item is listed on invoice

[2] The First Lien Notice, First Commencement of Action, Second Lien Notice, and Second Commencement of Action were admitted into evidence as Plaintiff's Exhibits 9 through 12, respectively, via a stipulation of the parties at the April 23, 2010 hearing.

[3] On April 21, 2010, HIC filed its Motion to Amend Plaintiff's Amended Complaint However, at the hearing the Court announced that it would proceed on HIC's October 2, 2009 Amended Complaint, as Bay Isles did not have an adequate time to respond to said motion in advance of the April 23, 2010 hearing. The Court will dispose of HIC's motion to amend in a separate Order.

[4] In the Declaration the structure is referred to as the Reception Building.

706001-124 attached to the First Lien Notice. It is of note that Thomas Eudy, of HIC, testified that the safety fence was removed for the purpose of backfilling behind the Administration Building, which is located on Parcel 3ABC.

Presently, Bay Isles has contracted with individuals to convey Units A-202 and A-301 at the Grande Bay Condominium, both of which are subject to the Second Lien Notice of HIC.[5] However, Bay Isles is unable to transfer clear title in light of the recorded lien notices and notices of commencement of action. Because HIC was unwilling to provide releases of these units to allow closings to proceed, Bay Isles filed its Motion to Dissolve Lien.[6] HIC, of course, opposes said motion.

Bay Isles contends that because the only construction services performed by HIC between June 26 and July 15, 2009 were to improve the Administration Building and Building E, any construction lien imposed pursuant to Virgin Islands Construction Lien Act may properly cover only those structures and Parcel 3ABC on which they sit. Bay Isles also argues that it sought, but was unable to obtain, a surety bond to secure the release of the lien as contemplated by Section 260 of that Act. Finally, Bay Isles contends the Section 908 of the Virgin Islands Condominium Act prohibits HIC's assertion of a blanket lien against the entire Grande Bay Condominium and the units therein. Therefore, Bay Isles posits, an order should issue from this Court directing HIC to cancel its lien to the extent that it is asserted against Parcels 86-3, 86-4, 86A-3, 86A-4.

HIC counters that its blanket construction lien is appropriate because Section 255 of the Virgin Islands Construction Lien Act provides that when materials are used to improve multiple pieces of real estate, a lien may arise against all real estate on which those materials are used to construct improvements. HIC also argues that, based on its own inquiries, it is possible for Bay Isles to apply for a surety bond and meet the provisions of Section 260 of the Virgin Islands Construction Lien Act.

---

[5] The contracts of sale for these units were admitted into evidence as Defendant's Exhibits 16 and 17, respectively, via a stipulation of the parties at the April 23, 2010 hearing.

[6] Bay Isles has also moved to dismiss this action, alleging that HIC has failed to file its annual reports with, and pay its annual franchise taxes to, the Office of the Lieutenant Governor, Division of Corporations, as required by Virgin Islands law. The Court will dispose of this motion in a separate order.

Finally, HIC suggests that a blanket lien is permitted under Section 908 of the Virgin Islands Condominium Act, and that individual unit owners may obtain a release of the construction lien against their unit by paying a *pro rata* portion of the debt for which the lien is imposed.

The Court notified the parties that it was treating Bay Isles motion as one seeking mandatory injunctive relief, and advised them to be prepared to address the traditional injunction factors at the April 23, 2010 hearing. Not surprisingly, after considering the evidence presented and reviewing the applicable law, the Court determines that the correct resolution of this matter lies in between the disparate positions of the parties. Therefore, as discussed herein, the Court determines that a part of HIC's construction lien is proper, while other portions thereof are in contravention of Virgin Islands law.

## II. Legal discussion.

This civil action presents the Court with what the parties portray as a conflict between the Virgin Islands Condominium Act (the "VICA") and the Virgin Islands Construction Lien Act (the "VICLA"). The VICA governs all condominium properties in the Territory, including how liens attach to said properties, and is applicable to the issues raised in this matter. The VICLA is a comprehensive enactment which regulates the imposition and dissolution of construction liens in the Virgin Islands, and also is germane to the issues at hand. Therefore, it is the duty of this Court, if at all possible, to harmonize the provisions of the VICA and the VICLA which affect this lawsuit. *See generally, Island Finance of the V.I. v. Frett*, 21 V.I. 161, 167 (Terr. Ct. 1984); *Espinosa v. Gov't of the V.I.*, 20 V.I. 78, 81 (Terr. Ct. 1983). The Court concludes that the statutes can be read in harmony without doing damage to the purposes of the respective laws. Construction liens may arise against condominium property under the VICLA, but, in view of the provisions of the VICA, in a more restricted manner than they arise against other types of real estate.

### a. HIC has met the requirements of the Virgin Islands Construction Lien Act, giving rise to a construction lien against the Grande Bay Condominium, subject to the provisions of the Virgin Islands Condominium Act.

■ The VICLA, enacted at Title 28, Chapter 12, Virgin Islands Code, represents ". . . a clear declaration by the Legislature of a public policy to

protect subcontractors from the risk of nonpayment." *Shearman & Assocs., Inc. v. Continental Cas. Co.*, 901 F. Supp. 199, 33 V.I. 192, 195 (D.V.I. 1995). It also provides protection to prime contractors, who are defined as contractors who enter into real estate improvement contracts directly with real property owners. 28 V.I.C. §§ 252(a)(1), (b)(1). Based on the testimony adduced at the hearing, it is not disputed that HIC contracted directly with Bay Isles, thereby meeting the statutory definition of a prime contractor.

■ Construction lien statutes, called mechanic's lien statutes in some jurisdictions, seek to balance two important competing interests: 1) securing payment to contractors and subcontractors who provide materials and/or services to improve an owner's property; and 2) protecting property owners from abusive lien practices and the risk of double payment. *See Labov Mechanical, Inc. v. East Coast Power, L.L.C.*, 377 N.J. Super. 240, 872 A.2d 142, 145 (2005). Construction lien statutes are in derogation of the common law, which usually requires a strict construction of the law, but also are remedial in nature, which typically necessitates a liberal construction. 3 *Norman J. Singer* and *J.D. Shambie Singer, Sutherland Statutory Construction* § 60:2 (7th Ed. 2008). In order to harmonize these seemingly adverse interests, courts strictly construe the procedural requirements of construction lien statutes, but, once those requirements are met by a claimant, said statutes are liberally interpreted in order to give effect to their remedial nature. *See, e.g., Alliance Steel, Inc. v. Piland*, 39 Kan. App. 2d 972, 187 P.3d 111, 115 (2008); *Johnston v. Palmer*, 337 Mont. 101, 158 P.3d 998, 1005 (2007).

Under the VICLA, a construction lien arises in favor of a prime, sub-, or sub-subcontractor only against real property which he has improved pursuant to a real estate improvement contract. 28 V.I.C. § 253. Additionally, the claimant must comply with section 264 of Title 28, Virgin Islands Code in order for the lien to arise. *Id.* Section 264 requires a claimant to record its notice of construction lien in the Office of the Lieutenant Governor, Office of the Recorder of Deeds, within ninety (90) days of the final provision of materials or services by the contractors, and demands that certain information be included in the notice of lien. 28 V.I.C. §§ 264(a), (c).

It is clear that HIC met all of the VICLA procedural requirements in this case. Per the First Lien Notice, HIC recorded its construction lien notice on July 31, 2009, well within 90 days of July 15, 2009 as provided

by 28 V.I.C. § 264(a). [Plaintiff's Exhibit 9]. The First Lien Notice is on the form provided by the Office of the Lieutenant Governor[7] and contains all of the information required by 28 V.I.C. § 264(c). This litigation was commenced on September 18, 2009, which meets the deadline set forth in 28 V.I.C. § 271(a). Moreover, when HIC filed this lawsuit, it also recorded the First Commencement of Action in accordance with 28 V.I.C. § 269(a). The Second Lien Notice, which Thomas Eudy testified was an amended notice to clarify the particular properties subject to HIC's lien, in his view, also was recorded in conformity with the governing timelines. 28 V.I.C. § 265(a). All of the documents demonstrating compliance with the VICLA procedures were introduced into evidence at the April 23, 2010 hearing. Therefore, the Court concludes that HIC met the procedural aspects of the VICLA, and will view the remaining provisions of the statute liberally to give effect to its remedial goals.

The amount of the lien of a prime contractor is the amount owed to it less the amount secured by liens of any sub- or sub-subcontractors. 28 V.I.C. § 256(a). In this matter, no evidence has been presented which indicates that there are any liens of sub- or sub-subcontractors. Hence, the lien of HIC, if any, is limited to the amount owed to it by Bay Isles for services rendered, but for which payment was not issued. While, at the hearing, HIC repeatedly raised the fact that it performed services for Bay Isles at Grande Bay from January of 2007, it also expressly acknowledged, through the testimony of Thomas Eudy, that the only work for which payment is outstanding, is that which was performed between June 26 and July 15, 2009. The hearing testimony further revealed that the undisputed amount in question is $127,32.00. Bay Isles concurs that this is the amount in dispute in its filings and testimony at the hearing.[8]

With respect to what property at Grande Bay was improved between June 26 and July 45, 2009 pursuant to the longstanding oral agreement of

---

[7] The Lieutenant Governor is statutorily obligated to provide the requisite forms pursuant to the express terms of the VICLA. 28 V.I.C. § 276.

[8] While Bay Isles does not dispute that the lien of HIC, based upon invoices attached to the First Lien Notice, may be valued at $127,332.00 at this point in the proceedings, Bay Isles does dispute that, ultimately, this is the true value of the debt. Bay Isles contends that HIC overcharged for the services rendered. However, at this preliminary stage, the Court will rely on the figure of $127,332.00, solely for purposes of determining the construction lien amount as of the time it was recorded with the Recorder of Deeds. The final determination of the actual debt of Bay Isles to HIC, if any, will be resolved during the ordinary course of litigation, and not at this preliminary stage.

the parties, they agree that work was performed on the Administration Building and Building E, both of which are located on Parcel 3ABC. HIC contends that it also performed work on Buildings A, B, C, and D at Grande Bay during that same time frame. However, the documents entered into evidence pursuant to the stipulation of parties do not reflect that any work was performed or invoiced for Buildings A, B, C, and D between June 26 and July 15, 2009. Both parties have acknowledged that these documents, in particular Plaintiff's Exhibits 9 and 14, accurately depict the work performed by HIC during this time period. Therefore, the Court will rely upon the contents of these documents, and conclude that all work performed by HIC between June 26 and July 15, 2009 was intended to, and did, improve only the Administration Building and Building E.

The sole source of real dispute regarding this work was the removal of the safety fence as noted on invoice 706001-124, which is a part of Plaintiff's Exhibit 9. However, as noted above, the uncontroverted testimony of Thomas Eudy at the hearing was that the safety fence was removed in order to provide backfill in support of the Administration Building. This testimony is corroborated by the documents numbered "H.I.C. 10027" and "H.I.C. 10030" which are part of Plaintiff's Exhibit 14. Despite the confusing and contradictory testimony regarding where exactly the safety fence was located on the Grande Bay property, it is clear from the evidence that its removal was solely for the purpose of improving the Administration Building, and not any other building on the site. In light of the evidence that the work performed by HIC at Grand Bay between June 26 and July 15, 2009; improved only the Administration Building and Building E, and the evidence clearly shows these structures are both located on Parcel 3ABC, the Court is compelled to conclude that no lien arose in favor of HIC against Buildings A, B, C, and D, or any of the units contained therein.

■■ HIC contends that because it performed work for an extended period of time over the entire Grande Bay property, its lien extends to the entire condominium pursuant to 28 V.I.C. § 255(b). The Court disagrees with this argument for several reasons. First, Section 255 of the VICLA applies to liens for materials used to improve real property. As noted above, the testimony was unequivocal that the agreement between Bay Isles and HIC was for time and labor only, and not materials, thus making Section 255 inapplicable. Second, apportionment of a materials lien under

Section 255 is appropriate only where ". . . separate lots, parcels or tracts of real estate are being improved under a single notice of commencement (see section 262 of this title). . .". 28 V.I.C. § 255(b). The notice of commencement referenced is a notice of commencement of real estate improvements, which may by recorded at the Recorder of Deeds. In this matter, though, there was no testimony given, nor documents entered into evidence, that demonstrated that a notice of commencement was recorded. Therefore, the apportionment of lien provisions of 28 V.I.C. § 255(b) are inapplicable. Finally, as discussed in more detail below, a blanket lien is not permitted against condominium property after the declaration is recorded under the VICA.

The foregoing conclusion does not mean, however, that the entire Second Notice of Lien recorded by HIC is improper with respect to all of Parcels 86-3, 86-4, 86A-3, and 86A-4, as argued by Bay Isles. As discussed earlier, HIC met all of the procedural requirements imposed by the VICLA, and, therefore, the provisions of said act must be construed broadly to give effect to its remedial purpose. *See, e.g., Alliance Steel, Inc. v. Piland, supra; Johnston v. Palmer, supra.* The Court is of the position that this analysis requires it to uphold the lien of HIC as to any property improved pursuant to the agreement of the parties, since HIC has achieved the procedural requirements of the VICLA. However, the determination of what properties at the Grande Bay Condominium are properly subject to HIC's construction lien requires a review of the provisions of the VICA and the Declaration for the project.

### b. Under the Virgin Islands Condominium Act, HIC's construction lien arises only against the units owned by Bay Isles.

■ As Grande Bay was placed into a horizontal property regime, 28 V.I.C. § 902, pursuant to the recordation of its Declaration, it is a condominium subject to the VICA, which is found in Title 28, Chapter 33, Virgin Islands Code. Condominium statutes are construed in accordance with the general canons of statutory construction. 3B *Norman J. Singer and J.D. Shambie Singer, Sutherland Statutory Construction* § 78:1 (6th Ed. Supp. 2009-2010). Therefore, it is this Court's duty to give effect to the plain meaning of the words contained in the VICA. *See, e.g., People v. Baxter*, 49 V.I. 384, 388-389 (V.I. 2008) (". . .when construing the terms of a statute, we begin with its plain language . . .") (citation omitted). The

section which bears directly on this matter is 28 V.I.C. § 908(a), and it provides in pertinent part,

> "Subsequent to recording the declaration as provided in this chapter, and while the property remains subject to this chapter, no lien shall thereafter arise or be effective against the property. During such period liens or encumbrances shall arise or be created only against such apartment and the percentage of undivided interest in the common areas and facilities, appurtenant to such apartment, in the same manner and under the same conditions in every respect as liens or encumbrances may arise or be created upon or against any other separate parcel of real property subject to individual ownership. . . ."

■ The first sentence of § 908(a) ". . . is fashioned to prevent a developer from 'encumbering the interests of others by giving a lien against the whole property once the [declaration] is filed.' " *Pantheon Enters., Inc. v. Hotel on the Cay Timesharing Ass'n, Inc.*, 41 V.I. 104, 110 (Terr. Ct. 1999) (quoting *Resolution Trust Corp. v. Eagle Lake and Golf Condominiums*, 310 S.C. 473, 427 S.E.2d 646, 648 (1983)). Thus, HIC's argument that it may claim a lien on the entire Grande Bay property simply because it performed work on the property for over two years pursuant to an oral agreement with the developer must fail. Bay Isles had no ability to take steps which would place the entire property under a blanket lien after the property had been submitted to a condominium regime, except to the extent permitted under the VICA. *See, Pantheon Enters., Inc., supra* (noting that a mortgage placed on a condominium property in violation of § 908 of the VICA was void).

■ However, § 908(a) of the VICA, taken as a whole, does not prohibit the imposition of all liens against condominium property. Rather, the second sentence of the section makes clear that a unit owner may encumber its own unit and the associated undivided common interests in the common areas, but not the units and undivided common area interests of other unit owners. In addition, and critical to this case, the second clause of the second sentence of § 908 states,

> "Provided, that no labor performed or materials furnished with the consent or at the request of an apartment owner or his agent or his contractor or subcontractor shall be the basis for the filing of a lien pursuant to applicable law against the apartment or any other property

of any other apartment owner not expressly consenting to or requesting the same, except that such express consent shall be deemed to be given by the owner of any apartment in the case of emergency repairs thereto."

■ Therefore, after Bay Isles dedicated the property to the condominium regime, no lien for construction services performed pursuant to an agreement with Bay Isles could legally arise against any units at Grande Bay which were owned by persons or entities other than Bay Isles, unless those unit owners expressly consented to the work performed, or necessary emergency repairs were performed. There was no testimony that any other unit owners consented to the work performed by HIC between June 26 and July 15, 2009, nor was any evidence presented which indicated that HIC's work constituted emergency repairs. However, under § 908(a), Bay Isles was free to enter into agreements for work which benefitted its own units, and a lien may arise as against those condominium units and the undivided common area interests appurtenant to said units.

As discussed in Section II.a. above, no construction services were performed by HIC between June 26 and July 15, 2009 on Buildings A, B, C, and D at Grande Bay. Therefore, no construction lien arose as against Units A-102, A-201, A-202, A-301, A-302, B-102, B-104, B-201, B-204, B-302, B-303, B-304, C-302, C-PO1, C-02/Rooftop Terrace, C-PO4/Rooftop Terrace, D-102, D-PO2/Rooftop Terrace, and D-PO5.

At the April 23, 2010 hearing, Robert Messick testified that there are no units presently in Building E. This is supported by the Declaration which provides that there are ". . . fourteen (14) **proposed** Units and one (1) proposed rooftop terrace in Building E . . .". [Declaration, Section 3, p. 5] (emphasis added). However, these proposed units are identified by unit number in the Declaration in the same fashion as they appear in the Second Lien Notice. [Declaration, Section 10, p. 13]. This leaves a question for judicial determination of whether HIC's lien extends to the proposed units designated as E-101, E-102, E-103, E-104, E-201, E-202, E-203, E-204, E-301, E-302, E-303, E-304, E-T1/Rooftop Terrace, EPO1, and EPO2. Under the forgoing circumstances, the Court concludes that this portion of the lien is valid based on Virgin Islands precedent.

In *Maas v. Cabrite Point Condominium Ass'n*, 27 V.I. 115 (Terr. Ct. 1992), the subject condominium property, per its declaration, was to

219

consist of twenty condominium units housed in ten buildings. At the time of the litigation, fourteen of the twenty units had been constructed. The Government of the Virgin Islands ("Government") issued real property tax bills separately to the owners of the fourteen constructed units, but a single tax bill to the sponsor of the development for the units not yet built. This Court, under its prior designation, issued summary judgment in favor of the condominium association and the sponsor, declaring that "Each Condominium apartment unit, built or unbuilt, created by the recording of this Declaration, together with its undivided interest in, the common areas and facilities, thereafter constituted real property for all purposes . . .". 27 V.I. at 117-118. This Court cannot discern any reason to deviate from the holding in *Maas*.

The Declaration for Grande Bay specifically states that there are to be fifteen total units in Building E. Thus, once the Declaration was recorded, each of those units became a separate piece of real property and subject to liens for construction work done on them that was commissioned by their owner(s). It is undisputed that these units have not yet been sold, and, therefore, ownership of the same resides in Bay Isles. Further, the testimony and documents from the hearing demonstrate that HIC performed work on Building E at the behest of Bay Isles between June 26 and July 15, 2009, but has not been paid for said work. Therefore, HIC's construction lien against the units in Building E is valid under both the VICA and the VICLA.

Based on the Declaration and the testimony elicited at trial, both commercial units are situated in the Administrative Building (Reception Building), and HIC performed work on this structure during the applicable timeframe and has not been paid for said work. Therefore, HIC's construction liens against Commercial Unit 1 and Commercial Unit 2 also are valid under the VICA and VICLA.

The remaining unit listed in HIC's Second Lien Notice is the Amenities Unit at Grande Bay. This is an unusual unit which was created pursuant to the Declaration, and consists of

". . . the reception area, business office, rental office, exercise facilities and wine storage cabinet portions of the Reception Building, as reflected on the Plat on the mid level, but shall not include the upper level (Commercial Unit 1) or Commercial Unit 2. The portions of the Amenities Unit located within the Reception Building shall be avail-

able for use by the Commercial Units. The Amenities Unit also includes the housekeeping, laundry and maintenance facility located in the garage for Buildings A and B; the housekeeping, laundry and maintenance facility located in the garage for Building E; and the swimming pool and beach front, parcels 86-4 and 86-a-4 all as reflected on the Plat." Declaration at Section 2(a), pp. 1-2 and Section 4, p. 6.[9]

 This unit was created as a single unit per the plain language of the Declaration, which must be strictly implemented, and, if there is any ambiguity, construed against the developer or sponsor. 15A *Am. Jur. 2d Condominiums and Cooperative Apartments* § 8 (2000).

 The Amenities Unit, despite its contents, is not a common area or facility under the Declaration, but is the property of Bay Isles. [Declaration, Section 9.a., p. 11]. In fact, there is attached to the Declaration a form lease wherein Bay Isles would lease the Amenities Unit to the Grande Bay Resort Condominium Association, Inc. The Declaration also provides that the Amenities Unit has an undivided interest in common areas and facilities in the same fashion as all other units at Grande Bay. [Declaration, Section 10, pp. 11-12]. Importantly, the Administration Building (Reception Building) constitutes a portion of the Amenities Unit, and it is undisputed that HIC performed work which improved the Administration Building between June 26 and July 15, 2009, but has not been paid by Bay Isles. Because HIC improved a portion of the Amenities Unit, which is a single unit under the Declaration, this Court holds that HIC's construction lien legally extends to cover me entire Amenities Unit as described in the Declaration.

### c. HIC's construction lien extends to the undivided interests in the common areas and facilities associated with the units subject to said lien.

To summarize, the Court determines that HIC has a valid lien against the following units at Grande Bay: Amenities Unit, Commercial Unit 1, Commercial Unit 2, E-101, E-102, E-103, E.104, E-201, E-202, E-203, E-204, E-301, E-302, E-303, E-304, E-T1/Rooftop Terrace, EPO1, and EPO2. Bay Isles argues that because all of these units are located on

---

[9] The Declaration was admitted into evidence at the April 23, 2010 hearing pursuant to the stipulation of the parties as Plaintiff's Exhibit 1.

Parcel ABC, HIC does not have a cognizable construction lien against Parcels 86-3, 86-4, 86A-3, and 86A-4. The Court disagrees.

 Each unit against which HIC has a valid construction lien has assigned to it under the Declaration a percentage ownership in the common elements of the Grande Bay Condominium. [Declaration, Section 10, pp. 11-13]. Under Virgin Islands law, the interests in the common areas assigned to units pursuant to the declaration of condominium are indivisible and may not be partitioned. 28 V.I.C. § 905(c). Pursuant to the Declaration, the common areas at Grande Bay Condominium include numerous easements, fixtures, and installations that are located throughout Parcels 86-3, 86-4, and 3ABC[10], which are, therefore, themselves part of the common areas.[11] [Declaration, Section 9, pp. 10-11]. Therefore, HIC's construction lien extends to the undivided common interests assigned to the units at Grande Bay which are subject to its lien, including Parcels 86-3, 86-4, and 3ABC. This is supported by the VICA, which provides that liens may arise ". . . only against such apartments and the percentage of undivided interest in the common areas and facilities, appurtenant to such apartment . . .". 28 V.I.C. § 908(a).

### d. Appropriate remedy.

 In the April 15, 2010 Order setting the April 23, 2010 hearing, this Court viewed Bay Isles' Motion to Dissolve Lien as one seeking relief pursuant to 28 V.I.C. § 275. However, the predicate for the grant of relief under this section is a finding of bad faith actions taken by the claimant. Bad faith "is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." *In re 1997 Grand Jury*, 215 F.3d 430, 436 (4th Cir. 2000) (citations omitted). Nothing in these proceedings supports a finding of bad faith on the part of HIC in this matter. While each party strongly disagrees with the other's legal view on the propriety of HIC's recorded construction liens (first and second), this is not sufficient for the

---

[10] Parcels 86A-3 and 86A-4, the beachfront properties, are part of the Amenities Unit and expressly not part of the common areas. However, because HIC has a valid construction lien against the Amenities Unit, it also has a lien against these parcels.

[11] *See also*, 28 V.I.C. § 901(f)(1), which defines common areas and facilities to include "the land on which the building is located . . . ."

Court to conclude that HIC acted in bad faith. Therefore, the Court cannot grant relief pursuant to 28 V.I.C. § 275.

 With respect to traditional injunctive factors, no testimony was presented which provided any insight into the financial ability of Bay Isles. Of course, whenever preliminary injunctive relief is issued, a bond must be posted by the movant pursuant to FED. R. CIV. P. 65(c). *E.g., Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 210 (3rd Cir. 1990). In the absence of evidence of Bay Isles' financial ability, this tribunal is unable to impose a reasonable bond as required as part of an order for injunctive relief.

 However, it is clear that several units are improperly listed on HIC's Second Lien Notice, which creates an improper cloud on the title to said units, and inappropriately restricts Bay Isles' ability to sell or otherwise use its real property. To remedy this situation, the Court will use its authority to ". . . declare [the] rights, status, and other legal relations . . ." pursuant to 5 V.I.C. § 1261, the Declaratory Judgments Act. The provisions of Title 5, Chapter 89, Virgin Islands Code are ". . . to be liberally construed and administered." 5 V.I.C. § 1270. The Court will enter an order declaring the appropriate extent of HIC's construction lien against the Grande Bay Condominium. The Court will also direct HIC to cancel the First Lien Notice and Second Lien Notice, and record a Notice of Construction Lien which is consistent with the decisions reached herein. *See*, 5 V.I.C. § 1268 ("Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper"). The Court also will direct HIC to cancel the Second Notice of Commencement because, while the VICLA provides for an amendment to a lien, it does not authorize an amendment to a notice of commencement.

## III. Conclusion.

For the reasons set forth above, the Court determines that HIC has a valid construction lien against the Amenities Unit, Commercial Unit 1, Commercial Unit 2, Units E-101, E-102, E-103, E.104, E-201, E-202, E-203, E-204, E-301, E-302, E-303, E-304, E-T1/Rooftop Terrace, EPO1, and EPO2, and the appurtenant percentage interests in the common areas at Grande Bay Condominiums as set forth in the Declaration. Therefore, Bay Isles motion will be granted in part and denied in part in an appropriate order of even date.